JAMES M. MILLIGAN, JR., ET AL V.
SOUTHERN EXPRESS, INCORPORATED.

No. A-3630. Decided June 25, 1952.
(250 S. W., 2d Series, 194.)

*Hubert Bookout, Neilson Rogers* and *Joe G. Rollins,* all of Sherman, for appellants.

*Leachman, Matthews & Gardere* and *J. Carlisle DeHay,* all of Dallas for appellee.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The problem involved in the certified questions is whether a given contractual relationship between two domestic corporations makes one of them "an agency or representative" of the other within the meaning of subdivision 23 of the venue statute

(Art. 1995, Vernon's Tex. Civ. Stats. Ann.) which we quote (with the pertinent provision underscored) as follows:

"Corporations and Associations.—Suits against a private corporation, association, or joint stock company may be brought in the county in which its principal office is situated; or in the county in which the cause of action or part thereof arose; *or in the county in which the plaintiff resided at the time the cause of action or part thereof arose, provided such corporation, association or company has an agency or representative in such county;* or, if the corporation, association, or joint stock company had no agency or representative in the county in which the plaintiff resided at the time the cause of action or part thereof arose, then suit may be brought in the county nearest that in which plaintiff resided at said time in which the corporation, association or joint stock company then had an agency or representative. Suits against a railroad corporation, or against any assignee, trustee or receiver operating its railway, may also be brought in any county through or into which the railroad of such corporation extends or is operated. Suits against receivers of persons and corporations may also be brought as otherwise provided by law."

The defendant, Southern Express, Inc., a motor freight carrier with its principal office in Dallas County, was sued in Grayson County, where the plaintiffs reside, for damages arising from an automobile-truck collision occurring in Dallas County. The alleged agent in Grayson County is another motor carrier corporation, Northeast Texas Motor Lines, which there performed services for the defendant corporation under a written contract. The trial court sustained the plea of privilege, but the tentative opinion of the Dallas Court of Civil Appeals, Bond, C. J., dissenting, holds an agency to exist and thus maintains venue in Grayson County.

With the single exception hereinafter mentioned, the parties concede the controlling facts to have been conclusively established by testimony or otherwise as reflected in the following excerpt from the opinion below (the appellant" therein being, of course, the plaintiffs, and the "appellee" the defendant corporation [246 S. W. 2d 662, 663]):

"Only two witnesses testified, both for appellant. The first witness, G. V. Snowden, a former employee of Northeast Texas Motor Lines, testified in substance, material here, that in connection with his employment with Northeast Texas Motor Lines he performed duties for appellee as follows: He accepted orders for the hauling of freight, picked up and delivered freight, col-

lected money, made charges for services rendered by Southern Express, Inc.; that his Company audited and inspected Southern Express, Inc., books, and Southern Express, Inc., inspected the books kept by him for Southern Express; that he entered into oral contracts for the removal of freight into and out of Grayson County for Southern Express, and Southern Express had control over him as to how he handled freight; he quoted rates to prospective customers of Southern Express.

"Loren Mangrum testified in substance, material here, that he was district manager for Northeast Texas Motor Lines and assumed the duties of witness Snowden when Snowden quit his position; that his office accepted orders from customers for freight in the name of Southern Express, but that the freight was picked up by Northeast Texas Motor Lines through contract they held with Southern Express for that purpose; that if someone called up and had freight for Southern Express, they had authority to accept that order for Southern Express and to bill that person for Southern Express; also to pick up and deliver freight for Southern Express, and to collect money and collect charges for Southern Express. He is directly responsible to Northeast Texas Motor Lines, and Northeast Texas Motor Lines is in turn responsible to Southern Express. Southern Express had authority to tell them how to keep the books, and have presented rules for their keeping. There has always been another agent (at Denison) in Grayson County for Southern Express; Southern Express, Inc., is a common carrier and operates trucks daily into and through Grayson County, Texas.

"It was undisputed that appellants reside in Grayson County, Texas.

"Southern Express introduced their contract with Northeast Texas Motor Lines, which after reciting it was a common carrier of freight by motor vehicle desirous of contracting for depot facilities and a pickup and delivery service, in substance provided that Southern Express agreed to pay Northeast Texas Motor Lines ten cents per cwt., with modification for amounts over 10,000 lbs.; and Southern Express was to pay B. T. Brown $15 per month for dock space and also monthly phone bill, but no long distance calls; Telephone 565 C.O.D. cards to be made when deliveries are made; all money collected to be reported and remitted each week to 3131 Oakland Street, Dallas, Texas, with copy to Paris office of Northeast Texas Motor Lines; freight on hand to be reported on Form FA-24; Northeast Texas Motor Lines to use forms furnished by Southern Express, Inc.

"The contract also contains the following provisions: '(11) It is the intention of the parties by this agreement that their relationship shall be that of independent contractor and contractee; that in the event any claims or suits are made or filed against the Company arising out of the operation of said depot or said pick-up and delivery service, or the performance of this contract. Contractor agrees to defend the Company against such claims and suits, and to hold the Company harmless for all loss and costs, damage, expense, and liability in connection therewith.' "

For reasons not necessary to mention, the reference in the foregoing quotation to "another agent" of the defendant-appellee at Denison, is admittedly to be disregarded.

The questions certified are:

### "QUESTION NO. 1

"Is an independent contractor performing nondelegable duties for a common carrier an agent or representative within the meaning of Subdiv. 23, Art. 1995, Vernon's Revised Civil Statutes of Texas, 1925, so that venue of a suit against the common carrier can be maintained in the county where the nondelegable duties are being performed?

### "QUESTION NO. 2

"In the event Question No. 1 is answered in the affirmative, under the admitted facts here involved as disclosed in this Certificate and the attached opinions, was the Northeast Texas Motor Lines an agent or representative within the purview of Art. 1995, Subdv. 23, R.C.S., as to confer venue of the suit in Grayson County?"

For all the law dealing for one purpose or another with the topic of agency *vel non*, the present case appears to be the first in which this court has had to consider the subject as related to the venue provision in question. And while the phrase "agency or representative" or a very similar one also occurs elsewhere in Art. 1995, to wit, in subdivisions 9 ("Crime or Trespass"), 24 ("Carriers"), 25 ("Railway personal injuries"), and 27 ("Foreign Corporations"), we have apparently considered it very seldom in those connections.

In subdv. 9, no doubt the context, "* * * whether committed by the defendant or by his agent or representative," rather re-

stricts the meaning to a party, for whose conduct the defendant would normally be responsible under the doctrine of *respondeat superior;* but this would not necessarily entail a similar meaning, where the contextual reference is not to the tortious action of, but rather the regular presence of, the "agent" in the county concerned. It is also noted that, while the word "agency" is used in subdv. 23 and in one place in 27, the word "agent" is also used in 27, and is used to the exclusion of "agency" in 24 and 25.

Dealing with the 1885 statute, which used the expression "agency or representative" in connection with venue of actions against foreign corporations, we said in Bradstreet Co. v. Gill, 72 Texas 115, 9 S.W. 753, 2 L.R.A. 405 (1888) that

"The court should have instructed the jury that if Finney was employed or engaged by the company as its correspondent at the time the suit was brought to furnish it with information as to the commercial standing of merchants and business men in Bastrop County, to be used by the company in its reports to its customers and subscribers in conducting the business of the company, then he would be its agent, and he being a resident of the county the court had jurisdiction of the case."

The details of Mr. Finney's connection with the defendant foreign corporation are not further disclosed in the reports, but the above language does not purport to restrict the "agency or representative" to someone approaching the status of a servant. Rather, such a "correspondent", who probably had to exercise some discretion and was physically remote from supervision, would seem closer to the status of an independent contractor. Nor does the report disclose whether the correspondent had the power to bind the defendant by contract. In Atchison, Topeka & Santa Fe Ry. Co. v. Stevens, 109 Texas 262, 206 S.W. 921, we held a domestic railroad corporation subsidiary of a foreign railroad corporation, which otherwise did no business in Texas, not to be an agent of the parent company in El Paso County for purposes of venue under a statute corresponding to the present subdiv. 25. Henderson Grain Co. v. Russ, 122 Texas 620, 64 S.W. 2d 347, denied that an agency might exist under subdiv. 23 merely as the result of a sale by the alleged agent corporation to the defendant corporation of grain located outside of the county in question.

The Courts of Civil Appeals not unnaturally have had various occasions to consider the problem under subdiv. 23, and a number of these decisions are cited by the parties or the court

below. Texas Power & Light Co. v. Adamson, Tex. Civ. App. 203 S.W. 2d 275 and Talley v. Shasta Oil Co., Tex. Civ. App. 146 S.W. 2d 802, both by the Texarkana court, denied venue of the forum on the ground that the individuals then regularly performing essential services in the county of suit for the defendant had no important powers of contract. In Mangum v. Lane City Rice Milling Co., Tex. Civ. App. 95 S.W. 605, the Galveston court reached the same result, apparently on the ground that the alleged agent was merely a travelling agent who only visited the county of suit for short periods from time to time. Venue was sustained in Advance-Rumely Thresher Co. v. Moss, Tex. Civ. App. 213 S.W. 690, where the alleged agency was an organization, "William Connolly & Co.", which evidently made regular sales and contracts for repair of farm machinery of the defendant manufacturer and received commissions thereon from the latter pursuant to a formal contract. Our refusal of the writ of error in that case is shown by our records not to have involved the venue point. General Motors Acceptance Corp., v. Lee, Tex. Civ. App. 120 S. W. 2d 622, 624, deals rather incidentally with the point but does contain a statement suggesting that "agency or representative" is a broader idea than "agent" and may rest on the agent's performance of any one of several functions of the defendant. Painter Bus Lines, Inc. v. Carpenter, Tex. Civ. App. 146 S.W. 2d 278, by the San Antonio court, sustained venue in a case wherein Southwestern Greyhound Lines, Inc., under written contract with the defendant carrier, performed services for the latter quite similar to those performed by the alleged agent in the instant case, though apparently it was not there urged, as it is here, that the character of the relationship as being that of independent contract or the contrary was a material consideration.

We have little doubt that the majority below rightly concluded venue to lie under subdiv. 23. As Judge Norvell said in the decision last mentioned, there is no good reason why a corporation may not be an agency or representative for venue purposes, as it undoubtedly may be for many other purposes. And there is no serious dispute about the proposition stated in Advance-Rumely Thresher Co. v. Moss, 213 S.W. 694 supra, that "The question is to be determined by the facts, and, if William Connolly & Co. were in fact the agents and representatives of appellant in the transaction of its business, it was not competent for the parties to defeat the operation of the statute above cited by a special contract or limitation of authority," or about our own statement in Bradstreet Co. v. Gill, supra, "If relations exist which will constitute an agency it will be an agency whether

the parties understood it to be or not." But the thesis of the defendant corporation here evidently is that the statutory terms are to be interpreted in the light of the law of *respondeat superior,* and if the freedom of the alleged representative from close supervision of the defendant is such as to fit the relationship within the term "independent contractor," venue does not lie at the residence of the agent. This approach is, in our opinion, inapt.

**1** It will be admitted that, as is evidently the view of the Texarkana court, the presence in the county of a mere servant, for example, a salaried employee to clean out dirty trailers, does not create there an agency for venue purposes, even though *respondent superior* would obviously apply. Conversely, the more or less permanent possession by a resident of the county of a broad power of attorney of the defendant might well make such a person an "agency or representative" even though his high position necessarily involved powers of discretion far beyond those of a servant and therefore similar to those of an independent contractor. And, as before mentioned in connection with subdiv. 9 ("Crime or Trespass"), we are dealing here not at at all with liability of a principal for tortious conduct of the agent in the county of suit but simply with the matter of whether such an "agency or representative" there exists. It cannot be doubted that these words considered alone have several different legal meanings, and there is no indication in subdiv. 23 that agency in the sense of responsibility of the principal for tortious conduct of the agent was intended. Rather, in our opinion, the statute refers to a situation in which the business of the defendant is, in more or less regular and permanent form, actually conducted in the county of suit, or one in which a party possessing broad powers from the defendant resides in the county, the one instance being that of "agency" and the other of "representative."

**2** Now, it seems clear enough that the defendant, Southern Express, Inc., was doing business of its own in the county of suit. Doubtless much of what was done there by Northeast Texas Motor Lines was the private business of Northeast. But, whether the Texarkana court be correct or not in its thesis that an agency cannot exist without the power to contract for the principal, such power and its regular use in the very name of the principal as the contracting party are certainly the strongest indication that the principal is doing business through an agency. And it does not appear to be disputed that contracts of, and in the name of ,the defendant were regularly made with shippers in Gray-

son County by Northeast, acting through its employees. Such contracts were for the very kind of service which it was the business of the defendant to render and, being made in its name and with its consent, were as much its own contracts as if signed by its president. Since the contracts were admittedly made and valid, yet were not made by officers or employees of the defendant, obviously they were made through an agent, which could only be Northeast Texas Motor Lines or its officers or employees, it matters not which. That, as between the defendant and Northeast, the latter was to perform part of each contract and was to indemnify the defendant for any liability arising from such performance, clearly does not convert the contracts into contracts of Northeast rather than the defendant, which was the party liable thereon so far as the shippers were concerned and undoubtedly itself rendered and profited from a large part of the total performance contracted for. To say that the making of these contracts was not the business of the defendant done in the county of suit would be as unrealistic as saying the same of contracts of a manufacturer made in the county with purchasers of manufactured articles for future delivery. So long as they were valid contracts of the defendant, it makes little difference what kind of compensation Northeast received for its intervention in the matter or what degree of control was exercised by the defendant over the activities of Northeast. That at least some degree of, or attempt at control, was had over the part of those activities which concerned the defendant is clear and this does tend to confirm that the business in question was the business of the defendant, which actually operated its trucks into and out of Grayson County and there evidently discharged freight as well as took on freight, including that which had been contracted for by it through Northeast and "picked up" by the latter. If the total operations of Northeast had been on a smaller scale and Northeast not a corporation, but a mere trade name, with all its activities conducted by one owner and operator, who resided in the county and there regularly made freight contracts in the name of the defendant, the fact of a local agency of the defendant would appear more clearly, but essentially there is no difference between such a situation and the one before us. Essentially the same result was accomplished here as if the defendant had maintained a salaried employee resident in the county, who would conclude freight contracts for the defendant with shippers for shipments to points outside the county, and arrange in each instance with Northeast for the latter to perform the "pick up" part of the service for the defendant. That the result

should be obtained in the one case through a salaried employee and in the other through a carrier corporation, which could only act by means of its own employees, does not impress us as significant for the purposes of the venue statute.

**3** Turning now to the exact questions certified, they are so worded that they cannot be answered categorically without a holding on our part that the proper legal test for determining the real matter at issue is whether or not Northeast Texas Motor Lines was performing "nondelegable duties" of the defendant in Grayson County. We do not think this is the test, since the matter of nondelegable duties relate largely to other fields of law than that involved here. It is conceivable that a corporation which employed a servant to do some incidental menial task in the county might hire someone there merely to furnish proper tools to the servant. The matter of proper tools is a nondelegable duty, but it is quite doubtful if an agency under subdiv. 23 would exist. Our answer to the questions therefore is that the matter of delegable or nondelegable duty is not the appropriate test. However, as stated, we conclude venue to have been properly laid in Grayson County.

Opinion delivered June 25, 1952.