T. L. JAMES & COMPANY, Inc., et al.,
Appellants,

v.

Theta WALDREP et al., Appellees.

No. 16579.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 8, 1965.

Touchstone, Bernays & Johnston and Jim E. Cowles, Dallas, for appellant T. L. James & Co., Inc.

Henderson & Bryant and James E. Henderson, Sherman, for appellant Harry Newton, Inc.

King & Massey and Marion L. Massey, Fort Worth, for appellee Theta Waldrep.

Cooper Blankenship, Dallas, for appellee Rose Ficke.

Norman P. Hines, Jr., Dallas, for appellee Estate of Otto Julius Seaton, deceased.

LANGDON, Justice.

This appeal arises from three suits by appellees, Theta Waldrep et al., Mrs. Rose Ficke et al., and Norman P. Hines, Jr., Temporary Administrator of the estate of Otto Julius Seaton, deceased, in the 16th Judicial District of Cooke County, Texas, against appellants, T. L. James & Company, Inc., of Ruston, Louisiana, a foreign corporation, and Harry Newton, Inc., a Texas corporation, as a result of alleged injuries and the deaths of Merle N. Waldrep, John M. Ficke and Otto Julius Seaton, resulting from a collision occurring on November 2, 1961. Appellants, T. L. James & Company, Inc., and Harry Newton, Inc., each filed pleas of privilege in the three suits to be sued in Dallas and Young Counties, Texas, respectively. The three suits were consolidated by agreement for the purpose of hearing the pleas of privilege and are, therefore, consolidated into one action before this court on appeal.

The appellees seek to maintain venue of their respective suits against the appellants in Cooke County under exceptions 9a, 23, 27 and 29a of Article 1995, Vernon's Ann. Tex.St. in essence, they alleged that appellants were negligent in failing to provide adequate warning devices, signs and barricades to warn motorists of the repair work; to direct traffic into proper lanes and in causing north and southbound traffic to be routed over the two west lanes of that portion of the highway where the collision occurred without such warning signs, and that such negligence was a proximate cause.

No findings of fact or conclusions of law were filed by the trial judge. Since the order of the court overruling the pleas of

privilege implies a finding that the appellants failed to erect proper barricades and warning signs directing the traveling public and that such negligence was a proximate cause, it is necessary to review carefully the evidence offered by appellees at the hearing on the pleas of privilege to determine whether the implied findings by the trial judge are supported by the evidence.

From our review of the record, we have concluded that the appellees failed to meet the burden imposed upon them to retain venue in Cooke County. We reverse and render.

The record contains the testimony of only three witnesses offered by and relied upon by appellees. The witnesses, all disinterested parties, were William R. Gardner, highway patrolman who investigated the accident, Joe Edward McCarroll, who witnessed the collision in his rear view mirror (portions of the depositions of these two witnesses were offered), and John C. Simpson, supervising resident engineer of the Texas Highway Department in Gainesville, who was previously resident engineer of the same Department in Cooke County and Gainesville. The latter appeared in person.

There are some discrepancies in the testimony of these witnesses as to the exact character, wording and location of the various signs and barricades because as they explained almost two and a half years had elapsed from the date of the collision to the date of the hearing on the pleas of privilege.

It is undisputed that the collision occurred in Cooke County on a portion of Highway 77 on which appellants, both road contractors, were jointly engaged, under contract, to convert from a two-lane into a modern four-lane expressway with the north and southbound lanes separated by a 45 foot median strip. The new highway is now designated as Interstate Highway 35. The highway designations of 35 and 77 will be used interchangeably in this opinion as was done in the trial court.

The topography in the area where the entrance road leading from California Street enters Highway 77 and where appellees allege signs and barricades were inadequate is without dispute. The testimony as to this area together with other factors relating to the collision are summarized as follows:

California Street runs east and west in the City of Gainesville. It passes under the roadway now designated as Interstate Highway 35, which runs generally north and south. An automobile traveling west on California Street (as did the cars of Seaton and of the witness McCarroll), after passing under Highway 77, was required to turn left and proceed over the entrance road leading up to and entering Highway 77 at a point several hundred feet south of California Street. A short distance south of this point of entrance was located a barricade on the left or east portion of the highway. This barricade had the purpose of squeezing southbound traffic to the right or west portion of Highway 77 as it proceeded south. It also served to divert northbound traffic to the right or east as it entered the City of Gainesville or continued north toward Oklahoma. At the time of the accident, all traffic, both northbound and southbound, from a point a few hundred feet south of where the entrance road from California Street entered Highway 77, traveled on the newly constructed concrete slab, which was 24 feet in width. These are the two west lanes referred to in appellees' pleadings. This slab was eventually to constitute the southbound lanes of Interstate Highway 35. The old two-lane highway which was eventually to constitute the two northbound lanes of traffic for Interstate 35 was closed because of additional work being done on it.

The witness McCarroll had passed under Highway 77 and turned left to gain access to Highway 77. As he proceeded up the entrance road, he noticed in his mirror the automobile driven by Otto Julius Seaton following him. A short distance after these two vehicles entered Highway 77, each

passed a truck. After passing the truck McCarroll moved back to the right side of the roadway, but Seaton continued on the left until he was in head-on collision with a pickup truck driven by Ficke, accompanied by Waldrep. This collision occurred in daylight on the 24 foot concrete slab which was divided into two lanes by a center stripe. No reason appears from this record as to why Seaton did not move back to his proper side of the road after passing the truck. The truck he and McCarroll passed was on the right side when it was passed. McCarroll moved back to the right after passing the truck. Under the record there was nothing to prevent Seaton from moving over into the right-hand lane when McCarroll did. Further, there is no evidence in the record that the absence or presence of any particular warning sign caused Seaton to continue in the left lane rather than to fall in line with the other vehicles in the right-hand lane.

Each of the witnesses testified as to several warning signs, barricades and similar warning devices located in the area in question. There is no direct testimony indicating the lack of any particular sign or barricade at any specific point.

Officer Gardner testified that there was a barricade, fence like, on each side of the highway at all new construction. There is evidence that such barricades were present at the site in question and no evidence refuting the presence of such barricades. There were two yellow signs, diamond shaped, 8 feet tall and about 4 feet in width, as you entered Highway 77. He could not recall the wording but thought it was "two way traffic ahead" on one and "slow" on the other. There were six signs on Highway 35, three of which could be observed by a person entering from California Street. Again unable to recall the exact wording of the signs, he stated they were to the same effect, "slow, divided highway ends", and "two way traffic ahead".

McCarroll testified that as he turned off California Street on to the service road there were several signs indicating the road was under construction, one or more of which had blinker lights on them. He thought some were "no passing" signs but was not sure about the speed limit signs referred to by the other witnesses. He stated that as he entered Highway 77 on the morning in question he had no trouble in determining that the road was under construction. There were several signs between the place he entered Highway 77 and the point of the collision. He could not recall the number of signs or precisely the language used in connection with the warnings given but by looking at the signs he knew it was clearly a two-way road.

John C. Simpson, resident engineer of the Highway Department, stated there were barricades and warning signs on the road leading from California Street to Interstate 35. That a barricade had a "slow" sign on it and that on entering Highway 77 a motorist would confront another sign which to the best of his recollection read, "Form single lane". There was still another barricade south of the point where the entrance road came into Highway 77 which had the purpose of squeezing southbound traffic to the right. Both Simpson and Gardner referred to the "No passing" and "45 miles per hour speed limit" signs south of Gainesville on Highway 77 erected by the Highway Department which served as additional warnings that the roadway was restricted.

All warning signs required of the appellants under their contract with the State Highway Department were erected in the area involved. There was no complaint or testimony to the effect that the appellants had not fully complied with the contract in placing required warning signs. According to the witness Simpson, who represented the State Highway Department at all times pertinent hereto, the barricades and warnings were adequate. Otherwise he would have caused the appellants to change them.

The appellees, relying primarily upon subdivision 9a, place considerable emphasis

upon the testimony of Officer Gardner concerning one other accident and "several near chances", "probably a dozen", which occurred during November of 1961. He stated that he stopped several people proceeding south, driving on the wrong side of the road. The officer related that he had a problem trying to enforce the warning signs. He stopped people and asked, "didn't you know this was a 2-way roadway" and they would say, "no", and in answer to the officer's question as to whether they had seen the sign the persons would say, "What sign", and the officer would turn and point to the backs of the signs passed and presumably ignored by such persons.

In our opinion this particular evidence serves only to bolster the contentions of the appellants that adequate warning signs confronted drivers proceeding south and served notice that they were proceeding on a 2-way roadway. Further, the testimony merely indicates that probably twelve other persons in addition to Seaton failed to observe or having observed failed to heed the signs. This testimony strongly negatives the contention of the appellees concerning the alleged negligence of the appellants. Further, since the collision in question occurred on November 2, 1961, the "near chances" referred to took place after such collision unless they occurred during the first two days of November, 1961.

The admissibility of the above testimony as to "near chances" and one other accident is not presented on this appeal. However, we feel it is incumbent upon us to state that in our opinion the testimony was not based upon a proper predicate and thus was inadmissible. See Reynolds & Huff v. White, 378 S.W.2d 923, 930–931, syl. 11 (Tyler Civ.App., 1964, no writ hist.) for full discussion and authorities on this question.

"The general venue statute provides that when an action is based on negligence per se, negligence at common law, or any form of negligence, active or passive, the venue facts necessary for the plaintiff to establish by the preponderance of the evidence to sustain venue in a county other than the county of the defendant's residence are that an act or omission of negligence occurred in the county where suit was filed; that the act or omission was that of the defendant, in person, or that of his servant, agent, or representative acting within the scope of his employment; and that the negligence was a proximate cause of the plaintiff's injuries. Depending on the sufficiency of the proof, a plea of privilege in an action for negligence may or may not be sustained." 60 Tex.Jur.2d, p. 98, § 217, and authorities cited.

■ Although it is undisputed that the collision occurred in Cooke County and that the appellants were the contractors doing the work on the section of the road under construction, it was just as essential for the appellees to further prove negligence and proximate cause as a part of the venue facts. Lynch v. Millican, 304 S.W.2d 410 (Waco Civ.App., 1957, no writ hist.).

■ It is essential that the application of any exception relied upon must clearly appear. Goodrich v. Superior Oil Co., 150 Tex. 159, 237 S.W.2d 969 (1951).

■ Venue may not be established by implication. Saigh v. Monteith, 147 Tex. 341, 215 S.W.2d 610 (1948).

■ From our review of the evidence we have concluded that no specific act of negligence was proved on the part of either appellant.

In general, subdivision 23 of the venue statute provides that a domestic corporation may be sued in the county of its principal office; or in the county in which the cause of action or part thereof arose; or in the county of the plaintiff's residence provided the corporation has an agency or representative in such county at the time the cause of action or part thereof arose.

Subdivision 27 provides that a foreign corporation may be sued in any county

where the cause of action or part thereof accrued, or in any county where such company may have an agency or representative or in the county of its principal office.

In Fireman's Fund Ins. Co. v. McDaniel, 327 S.W.2d 358 (Beaumont Civ.App., 1959, no writ hist.), subdivision 27 was held to be unconstitutional to the extent it conflicts with the provisions of subdivision 23. The opinion made particular reference to the inequity of having to prove a cause of action by the preponderance of the evidence in a venue hearing involving a domestic corporation under subdivision 23, whereas under 27, involving a foreign corporation, no proof was required as to any cause of action at the venue hearing. Clark, Venue in Civil Actions in Texas, Chapters 23 (p. 121) and 27 (p. 154), and pocket parts; McDonald, Texas Civil Practice, Vol. 1, pp. 138–139, § 4.30 pocket parts. In Sugarland Industries, Inc., v. Falco, 348 S.W.2d 102 (Waco Civ.App., 1961, no writ hist.), the court detailed the venue facts the plaintiff has the burden of proving by a preponderance of the evidence to sustain venue under subdivision 27.

█ As previously stated, the only cause of action alleged against the appellants was based upon negligence and the appellees failed to prove negligence or proximate cause as against either. Further, there is no evidence that either of the appellants had an agency or representative in Cooke County or a principal office. Therefore, venue may not be maintained under either subdivisions 23 or 27. For definition of the terms "agency" or "representative", see Clark, Venue in Civil Actions in Texas, Chap. 23 (p. 121), § 3, and authorities cited; Brazos River Trans. Elec. Cooperative v. Vilbig, 244 S.W.2d 266, 268 (Dallas Civ.App., 1951, no writ hist.); Milligan v. Southern Express, 151 Tex. 315, 250 S.W.2d 194, 198 (1952); McDonald, Texas Civil Practice, Vol. 1, § 4.30 (pocket part); 60 Tex.Jur.2d p. 61, § 206.

"The venue of actions against corporations is also governed by the statutes that apply generally to individuals in so far as such regulations are applicable, for here, as elsewhere, the courts apply the familiar rule of construction that the word 'person' includes a corporation. * * * The general rule with respect to corporations, as well as individuals, is that a defendant is entitled to be sued in the county of his domicile, unless the case falls within one of the exceptions specified in the general venue statute." 59 Tex.Jur.2d p. 492, § 86.

Having determined that venue is not maintainable in Cooke County under subdivisions 9a, 23 and 27, the question remains as to whether 29a is applicable.

"The statutory exception governing two or more defendants in a case * * * brought under subdivision 29a * * * is purely ancillary to the other exceptions in the general venue statute and can never be invoked to fix venue in a given county independent of some one of those exceptions. It relates only to suits brought in a county where no defendant resides or is domiciled, but that can be maintained there against one defendant under some other exception in the statute other than subdivision 4. The purpose and intent of subdivision 29a is to provide that in a case where a defendant is sued outside the county of his residence, and venue as to him is fixed by some subdivision of the statute other than subdivision 4, any other nonresident necessary party defendant can be brought into the suit." 59 Tex.Jur.2d, p. 517, § 105. Continuing in the same text: "Where a suit is properly maintainable against one defendant in a county other than that of his residence, and the plaintiff therein joins another defendant and seeks to sustain venue as to him under the statutory exception regarding two or more defendants, the latter defendant is a necessary party under the statutory requirement if complete relief to which the plaintiff is entitled as against the defendant

properly suable in that county can be obtained only in a suit to which both defendants are parties. The necessary party must be one who is so vitally interested in the subject matter of the litigation that a valid decree cannot be rendered without his presence as a party. Merely being a proper party is not sufficient even though persons who are not proper parties to a suit cannot be necessary parties within the meaning of the statute.

"As against a plea of privilege, persons who are not necessary parties may not be sued away from the county of their residences unless some other exception to the general venue statute is applicable." 59 Tex.Jur.2d p. 519, § 106.

We have previously determined that venue is not properly maintainable against either of the appellants under the subdivisions discussed or otherwise under the record of this cause. Thus 29a is inapplicable unless the suit filed in Cooke County against Hines, Seaton's representative, also a nonresident who failed to file a plea of privilege, is effective to hold venue as to appellants under 29a.

The appellees Waldrep et al. and Ficke et al. allege that Otto Julius Seaton was negligent in operating his automobile at an excessive rate of speed, failing to keep a proper lookout and in various other respects in their suit against Norman P. Hines, Jr., temporary administrator of Seaton. Under the facts a strong prima facie case was made out against Hines. He failed to file a plea of privilege although Seaton did not live in Cooke County. Venue of an action against Seaton's representative can be maintained in Cooke County only because the alleged negligence of Seaton occurred there; thus, subdivision 4 has no application.

Recovery against the appellants is predicated upon alleged negligence in connection with placing of warning signs and against Seaton because of the manner in which he operated his automobile.

Obviously there was no concert of action as between Seaton and the appellants. They acted independently and were strangers to one another, each unaware of the other's presence or action. Neither of appellants is a necessary party to a suit against Seaton or his representative. Appellees could have full satisfaction in their suit by judgment and execution against Hines without the presence of either of the appellants.

Tarrant v. Walker, 140 Tex. 249, 166 S.W.2d 900 (1942); Coleman County Telephone Co-op., Inc. v. Cunningham, 318 S.W. 2d 461 (Eastland Civ.App., 1958, writ dism.); Leonard v. Abbott, 366 S.W.2d 925, 928 (Tex.Sup., 1963).

"Defendants who are jointly liable for a tort may be sued in the county of residence of one or more of the tortfeasors, provided the cause of action as to all the parties is the same. Similarly, in a proper case, tortfeasors may be jointly sued under subdivision 29a in any other county designated by an exception to the venue statute; but it must be shown that there was some concert of action or unity of design between the defendants so as to make them necessary parties, for if each acted independently of the other there is no community of liability." 59 Tex.Jur.2d, p. 538, § 113; 60 Tex.Jur.2d, p. 120, § 221.

We find no application of subdivision 29a to the facts of this case and thus sustain all of appellants' points of error pertaining thereto.

Since it is apparent from the record that the cases were fully developed in the trial court, we are of the opinion that the judgments overruling the pleas in each case should be reversed and rendered and the cases transferred to the proper forums rather than to remand for new trials on the venue issues.

Accordingly we reverse the judgment of the trial court in each of the three cases and herein render judgment sustaining the pleas of privilege of the nonresident defendants

(appellants) Harry Newton, Inc., and T. L. James & Company, Inc. We order venue as to the former changed to a District Court of Young County, Texas, and as to the latter to a District Court of Dallas County, Texas.

Reversed and rendered with instructions.