**COLORADO INTERSTATE GAS COMPANY, Appellant,**

v.

**MAPCO, INC., Appellee.**

**No. 8904.**

Court of Civil Appeals of Texas, Amarillo.

July 31, 1978.

Gibson, Ochsner, Adkins, Harlan & Hankins, Ira L. Edwards, Jr., Amarillo, for appellant.

Holliman, Langholz, Runnels & Dorwart, Thomas M. Davidson, Tulsa, Okl., Lemon, Close, Atkinson, Shearer & McCutcheon, Perryton, Lovell, Lyle, Renfer, Minkley & Moore, Jim R. Duvall, Dumas, for appellee.

REYNOLDS, Justice.

Defendant Colorado Interstate Gas Company appeals from an order overruling its plea of privilege. Plaintiff MAPCO, Inc., has failed to clearly establish an exception to the defendant's right to be sued in the county of its pleaded domicile. Reversed and rendered.

MAPCO, Inc., instituted this suit in Moore County against Coastal States Gas Corporation, Colorado Interstate Gas Company and CIG Exploration, Inc., gatherers of natural gas into their Moore County pipelines from whence they transport it to Fritch Plant, MAPCO's gas processing plant located in Hutchinson County. By its suit, MAPCO seeks a declaratory judgment determining that it has the right, under a series of natural gas processing agreements and over defendants' nonconcurrence, to undertake a project to rebuild its Fritch Plant to extract all hydrocarbon constituents not affecting the contractual BTU content of the natural gas for delivery.

Colorado Interstate Gas Company, a Delaware corporation doing business in Texas, interposed its plea of privilege, pleading that its principal place of business in Texas is in Potter County, the county to which the cause should be transferred. MAPCO controverted, asserting that venue is proper in Moore County under subdivisions 10, 14, 23, 24, 27 and 29a of Article 1995, the general venue statute.[1]

Prior to a hearing on the venue matter, MAPCO moved for, and the trial court ordered, the nonprejudicial dismissal of Coastal States Gas Corporation and CIG Exploration, Inc., as defendants. After the venue evidence was heard, the trial court overruled Colorado Interstate Gas Company's plea of privilege. This appeal ensued.

Because the venue order is unaccompanied by findings of fact and conclusions of law, it must be affirmed if it is supported by evidence sufficient to sustain venue under any invoked subdivision of the venue statute. *National Farmers Organization v. Ramsey,* 500 S.W.2d 192, 193 (Tex. Civ.App.—Amarillo 1973, no writ). Yet, if the plaintiff relies upon a specified exception of the venue statute to overcome the defendant's plea of privilege, the plaintiff must allege and prove the venue facts stated in the particular exception applicable or appropriate to the character of the action

alleged in plaintiff's petition. *Compton v. Elliott,* 126 Tex. 232, 88 S.W.2d 91, 93–95 (1935). Such venue facts must be both clearly pleaded and proved by a preponderance of the evidence, and all doubts must be resolved in favor of the general venue rule, *Goodrich v. Superior Oil Co.,* 150 Tex. 159, 237 S.W.2d 969, 972 (1951), for venue may not be sustained by implication. *Burtis v. Butler Bros.,* 148 Tex. 543, 226 S.W.2d 825, 828 (1950).

In appealing, Colorado Interstate Gas Company (CIG) has undertaken to demonstrate that none of the specified exceptions invoked by MAPCO is a basis for overcoming CIG's privilege to defend the suit in Potter County. Within its response MAPCO makes no appellate contention that, and has not briefed the questions whether, subdivisions 10, 24 and 29a will sustain venue in Moore County. Accordingly, CIG's unchallenged demonstrations that these exceptions have no application are accepted as correctly stating the facts representing inapplicability. Rule 419, Texas Rules of Civil Procedure; *Milam v. Langford,* 533 S.W.2d 857, 859 (Tex.Civ.App.—Amarillo 1976, no writ). Beyond that, although MAPCO had an absolute burden to plead the venue facts necessary to activate the statutory exceptions relied upon, *Pena v. Sling,* 135 Tex. 200, 140 S.W.2d 441, 448, 128 A.L.R. 1223 (1940), there is no pleaded contention that MAPCO is seeking recovery of personal property located in Moore County so as to bring its suit within subdivision 10. *First State Bank of Childress, Texas v. Fields,* 551 S.W.2d 476, 479 (Tex.Civ.App.—Amarillo 1977, writ dism'd). Similarly, while MAPCO's burden to prove its right to venue in the county of suit is as complete and absolute as is its burden to plead the same, *Pena v. Sling, supra,* at 448, we have not been directed to any proof in the record that CIG is a common carrier within the sense of subdivision 24. Likewise, subdivision 29a which, by its own terms, applies only if there is more than one defendant,

---

1. Citations of numbered subdivisions are referenced to the subdivisions of Tex.Rev.Civ.Stat. Ann. art. 1995 (1964).

was rendered inoperative by the dismissal of all defendants except CIG before the venue hearing. *Accord, Zurich Insurance Company v. Wiegers,* 527 S.W.2d 511, 514 (Tex.Civ.App.—Austin 1975, no writ).

CIG disputes MAPCO's claim to venue in Moore County pursuant to that portion of subdivision 14 which mandates that a suit for the recovery of land must be brought in the county where the land or a part thereof lies. The venue facts which must be established in this regard are that (1) the suit is, as disclosed by the petition, of a type specified in this subdivision, and (2) the land or a part thereof is, as shown by proof independent of the pleadings, located in the county of suit. *Piazza v. Phillips,* 153 Tex. 115, 264 S.W.2d 428 (1954). The nature of the suit is determined from the facts alleged in plaintiff's petition, the rights asserted and the relief sought, *Renwar Oil Corporation v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774, 775 (1955), and the real character of the lawsuit governs the venue. *Warren v. Denison,* 531 S.W.2d 215, 218 (Tex.Civ.App.—Amarillo 1975, no writ).

It is not disputed that the natural gas containing the hydrocarbon constituents at issue is produced from land lying partly in Moore County. So, resort to MAPCO's pleadings determines if the type or real character of the action brings it within the ambit of subdivision 14.

MAPCO's pleadings contain these allegations: CIG is obligated by an October 15, 1931 contract to deliver natural gas underlying certain lands, including lands situated in Moore County. MAPCO has succeeded to a December 26, 1951 deed grant of

> All hydrocarbons having a boiling point as high and higher than *ethane,* including without limitation, all *ethane* . . . contained in the natural gas in place . . less, however, only such hydrocarbon constituents required in good faith . . . to be delivered . . . pursuant to a contract dated October 15, 1931, as amended . . .

under the same lands. The deed obligated CIG to process the natural gas to remove, and pay to MAPCO eighty-five per cent of the profits from the sale of, the hydrocarbon constituents. On March 7, 1963, MAPCO and CIG entered into two agreements by virtue of which CIG would close its processing plant, MAPCO would build its own plant to extract its hydrocarbon constituents from the natural gas and would pay CIG twenty per cent of the revenues from the sale of the hydrocarbon constituents, and MAPCO's extraction shall not reduce the heating value of the residue gas below a specified BTU content. MAPCO constructed and placed its plant in operation.

Further alleged is that thereafter on August 31, 1967, MAPCO and CIG executed another agreement to clarify the rights and obligations of MAPCO to process the gas. By this agreement, MAPCO is granted the right to extract all hydrocarbon constituents in the natural gas, provided that (1) the heating value of the residue gas shall not be reduced below the specified minimum BTU contents, (2) the residue returned to CIG shall be of pipeline quality, and (3) MAPCO shall extract no more helium than is necessary in extracting hydrocarbons to reach the minimum BTU contents specified. In accordance with the latest agreement, MAPCO constructed a new processing unit at its Fritch Plant located in Hutchinson County. CIG produces the natural gas, gathers it into its Moore County pipelines and transports some of it to the Fritch Plant for processing. MAPCO processes the natural gas without extracting the ethane from it, and delivers the residue gas to CIG.

MAPCO then alleges that it has proposed to undertake a project to rebuild its Fritch Plant at a cost of $20,000,000 to extract all hydrocarbon constituents, including ethane, and to still deliver the residue gas to CIG at the specified minimum BTU contents. CIG has taken the position that MAPCO has no right to undertake the project; in the meantime, MAPCO claims, its hydrocarbon constituents are being lost to it.

MAPCO prays for a judgment declaring that it has the right to undertake the project and for recovery, in a supplemental

proceeding, of damages for the value of its hydrocarbon constituents lost during the delay caused by CIG in completing the project.

■ The ultimate or dominate purpose of the suit, and not how the cause of action is described, determines whether a suit falls within the purview of subdivision 14. *Texaco, Inc. v. Gideon,* 366 S.W.2d 628, 631 (Tex.Civ.App.—Austin 1963, no writ). Although MAPCO has pleaded its title to the hydrocarbon constituents contained in the natural gas in place, which is realty, *Stephens County v. Mid-Kansas Oil & Gas Co.,* 113 Tex. 160, 254 S.W. 290, 292 (1923), MAPCO does not seek a declaration of that title. MAPCO's petition, in the nature and form of a declaratory judgment action, does not contain either the customary form of allegations or a prayer for the recovery of land within the meaning of subdivision 14, and the damages sought are not for injury to the realty itself. Instead, as manifested by its pleadings, MAPCO primarily seeks a declaration that its proposed extraction project in Hutchinson County is sanctioned by the 1967 clarification agreement for processing the natural gas. At that stage in the process, the natural gas containing the hydrocarbon inerts which MAPCO seeks to recover, having been lawfully produced and severed from the land, has ceased to be realty and has become personalty in the possession of MAPCO. *See W. B. Johnson Drilling Company v. Lacy,* 336 S.W.2d 230, 234 (Tex.Civ.App.—Eastland 1960, no writ); *Chaffin v. Hall,* 210 S.W.2d 191, 194 (Tex. Civ.App.—Eastland 1948, writ ref'd n. r. e.). The ultimate purpose of the action, then, is to secure a declaration that MAPCO has the contractual right to retain its personal property in its possession in Hutchinson County, a declaration that is not contingent on MAPCO's title to the hydrocarbon inerts in place in Moore County. Thus, the primary purpose of the action is not for the recovery of land so as to fix venue under subdivision 14. *Lake v. Reid,* 252 S.W.2d 978, 982 (Tex.Civ.App.—Texarkana 1952, no writ).

The next inquiry is whether MAPCO sustained its burden to clearly plead and prove venue in the county of suit as authorized by either subdivision 23 or subdivision 27. As material to the appellate issues, the former subdivision allows a suit against a private corporation to be kept in the county where the corporation's principal office is situated, while the latter permits a suit against a foreign corporation doing business within Texas to be maintained in the county in which the principal office of the corporation may be situated or where such corporation may have an agency or representative.

There is presented, by CIG's first three points of error and MAPCO's first counterpoint, the question whether the record sufficiently establishes that CIG's principal office is located in Moore County. Although it is undisputed that CIG is a private, foreign corporation doing business within the state, we do not reach an evaluation of the evidence pertaining to the location of its principal office.

■ When CIG filed its plea of privilege in proper form alleging that its principal office is situated in Potter County, it constituted prima facie proof of its right to a change of venue on that account, and could be overcome only by MAPCO's both pleading and proving a statutory right to maintain the suit in Moore County. *Pena v. Sling, supra,* at 448. However, in controverting CIG's plea, MAPCO's affidavit neither denied nor challenged CIG's allegation that its principal office is situated in Potter County, and nowhere in MAPCO's pleadings is there set forth, even generally, any allegation that CIG's principal office is situated in Moore County. To sustain venue in Moore County because CIG's principal office is located there, MAPCO had the burden to plead, as well as to prove, that exception. *See Newlin v. Smith,* 136 Tex. 260, 150 S.W.2d 233, 234 (1941). MAPCO did not so plead and, consequently, that exception does not benefit MAPCO. *Employers' Fire Insurance Company v. Alvarez,* 511 S.W.2d 400, 402 (Tex.Civ.App.—Amarillo 1974, no writ).

The remaining query, then, is whether CIG had, within the scope of subdivision 27, an agency or representative in Moore County. For venue purposes, the agency or representative contemplated refers, according to *Milligan v. Southern Express, Inc.,* 151 Tex. 315, 250 S.W.2d 194, 198 (1952),

> . . . to a situation in which the business of the defendant is, in more or less regular and permanent form, actually conducted in the county of suit, or one in which a party possessing broad powers from the defendant resides in the county, the one instance being that of "agency" and the other of "representative."

The *Milligan* pronouncement was referenced to the language of subdivision 23, but the same construction is given to subdivision 27. *Fireman's Fund Insurance Company v. McDaniel,* 327 S.W.2d 358, 363 (Tex. Civ.App.—Beaumont 1959, no writ).[2] However, subdivision 27 does not authorize—as, for example, subdivision 24 authorizes for a suit against a common carrier—maintenance of the suit in any county where the defendant "does business." And it is evident from the developing language of *Milligan* that if a corporation does business in the county of suit through an employee, the employee, to become an agent or representative of the corporation, must do more than mechanically execute tasks for the corporation, *Mobil Oil Corporation v. Cook,* 494 S.W.2d 926, 933 (Tex.Civ.App.—Amarillo 1973, no writ); he must be invested with some discretionary power in conducting the corporate affairs. *Milligan v. Southern Express, Inc., supra,* at 197; *Amoco Production Company v. Mayer,* 540 S.W.2d 353, 356 (Tex.Civ.App.—Beaumont 1976, writ dism'd). Thus, by the *Milligan* standard, the employee of a corporation becomes its agent or representative only if he is authorized to bring about a business relationship between the corporation and a third party. *Allis-Chalmers Mfg. Co. v. Coplin,* 445 S.W.2d 627, 628 (Tex.Civ.App.—Texarkana 1969, no writ).

As proof that CIG has an agency or representative in Moore County, MAPCO first points to the details of CIG's operations as undisputed evidence that the business of CIG is, in a regular and permanent form, actually conducted in Moore County. Undeniably, CIG does business in Moore County where its largest operation in Texas is located. The Moore County facilities, representing an investment in excess of thirty-one million dollars, include natural gas gathering lines, transmission lines and two natural gas processing plants. Employed by CIG in the operation of its business in the county are more than 140 nonsupervisory employees and at least fourteen supervisors. Yet, as the authorities enunciate, an agency or representative for venue purposes entails more than the fact that the defendant conducts or does business in the county of suit.

As further proof of an agency or representative, MAPCO calls attention to the job descriptions of CIG's district superintendent and field superintendents headquartered in Moore County. The district superintendent is responsible for the operations and maintenance of all pipelines, compressor stations, measurement facilities and gas processing, including the deliverability of both the quantity and quality of gas gathered. The field superintendents assist the district superintendent in the operations and supervise their subordinates for efficient, economical operations. There also is an area superintendent whose job description includes the element of frequent contact with customers, suppliers and the public.

While the job descriptions are impressive and it is not questioned that the daily operations are directed by the supervisors, there is no direct evidence that any supervisor does, or has the discretionary power to, contract or otherwise bring about any business relationship between CIG and third parties. To the contrary, the evidence is that the direct operational authority is reserved to and exercised by CIG's management personnel located in Colorado Springs,

---

2. This holding is unaffected by the disapproval expressed in *Commercial Insurance Company* *of Newark, New Jersey v. Adams,* 369 S.W.2d 927 (Tex.1963), of another holding of the case.

Colorado, and communicated to the district superintendent for execution. CIG's Colorado personnel are in daily contact with the district superintendent in Moore County by use of a direct communication line. Although the district superintendent makes recommendations, all decisions relative to the preparation of the budget, the hiring and firing of personnel, the purchase of material of any significant amount, the gas pressure required for operations, the quantity and quality of natural gas transported, the sale of liquids extracted at the local plants, and the maintenance programs are made in Colorado. Indeed, the evidence is that MAPCO personnel deal with the CIG personnel in the Colorado office, and there is no evidence of MAPCO's entry into a business relationship through, or even any negotiations with, any CIG personnel stationed in Moore County.

Granted, the evidence is that CIG does business on a large scale in Moore County through its employees, but there is a lack of probative evidence for a finding that any employee has been vested with the requisite discretionary power to bring about a business relationship between CIG and a third party so as to constitute the employee an agent or representative for venue purposes. This lack of evidence renders inapposite those cases containing evidence of a person's power to bind his principal which are advanced by MAPCO as authority for the conclusion that CIG has an agency or representative in Moore County. Here, the evidence, viewed in its brightest light, does no more than imply an agency or representative which, of course, does not sustain venue. *Burtis v. Butler Bros., supra,* at 828.

With due deference to the trial court's fact finding prerogative, we consider that MAPCO's pleadings and the evidence fail to establish with sufficient clarity the venue facts of any particular exception relied upon by MAPCO as applicable or appropriate to the character of the action alleged in MAPCO's petition. *See Compton v. Elliott, supra,* at 93, 95. There is no suggestion that the venue facts were not fully developed. Under these circumstances, CIG was entitled to have its plea of privilege sustained.

The judgment of the trial court is reversed. Judgment is here rendered that MAPCO's cause of action be, and it hereby is, transferred to a district court of Potter County. Rule 434, T.R.C.P.