**EXCEL CORPORATION, Appellant,**

v.

**Ruben PORRAS, Appellee.**

**No. 13–98–659–CV.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 21, 1999.

Rehearing Overruled Jan. 2, 2000.

Publication Ordered March 23, 2000.

Robert M. Cohan, Susan J. Sandidge, Cohan, Simpson, Cowlishaw & Wulff, Dallas, for amicus curiae.

Robert L. Craig, Eric Gordon Walraven, Craig Terrill & Hale, LLP, Lubbock, for Appellant.

Kevin Glasheen, Fadduol & Glasheen, Lubbock, George A. Quesada, J. Hadley Edgar, Law Offices of Frank L. Branson, Dallas, Frank Costilla, Brownsville, for Appellee.

Before Justices DORSEY, HINOJOSA, and CHAVEZ.

## OPINION

Opinion by Justice CHAVEZ.

Excel Corporation appeals from a judgment taken against it by Ruben Porras, a former employee. Porras's job was to mop blood from an area below where the first stages of cow butchering were performed at Excel's slaughterhouse in Friona, Parmer County, Texas. Porras sued Excel and its parent corporation, Cargill, Inc., alleging that Excel's negligence caused him to be injured when a knife was dropped on him. Porras non-suited Cargill on the second day of trial. Trial proceeded against Excel and the trial judge directed a verdict that Excel was negligent, the jury determined that Excel was grossly negligent, and the jury awarded $246,720 in actual damages and $754,000 in exemplary damages.

On appeal, Excel contends that the trial court erred in overruling its motion to transfer venue, directing a verdict for Porras on his negligence claim, refusing to submit the issue of comparative responsibility to the jury, allowing evidence of other injuries at Excel's facility, excluding the testimony of its expert witness, and including the testimony of Porras's expert witness. Excel also challenges the sufficiency of the evidence supporting liability and damages. We hold that venue was improper in Cameron County and reverse the judgment of the trial court.

The Texas venue laws were amended in 1995. The amending act "applies only to a suit commenced on or after September 1, 1995." Act of May 18, 1995, 74th Leg., R.S., ch. 138, § 11(a), 1995 Tex. Gen. Laws 983. This suit commenced May 6, 1994. Therefore, the former venue statute applies to this case. That statute provided:

> Foreign corporations, private or public, joint-stock companies or associations, not incorporated by the laws of this

state, and doing business in this state, may be sued in any county in which all or a part of the cause of action accrued, or in any county in which the company may have an agency or representative, or in the county in which the principal office of the company may be situated, or, if the defendant corporation has no agency or representative in this state, then in the county in which the plaintiffs or either of them reside. Former TEX. CIV. PRAC. & REM. CODE ANN. § 15.037 (Vernon 1986) (repealed), Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 3(g), 1983 Tex. Gen. Laws 2123. The statute further provided that:

When two or more parties are joined as defendants in the same action and/or two or more claims or causes of action are properly joined in one action and the court has venue of an action or claim against any one defendant, the court also has venue of all claims or actions against all defendants .... Former TEX. CIV. PRAC. & REM. CODE ANN. § 15.061 (Vernon 1986) (repealed), Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 4(a), 1983 Tex. Gen. Laws 2123–24.

Porras sought to maintain venue in Cameron County on the ground that the manager of a grain elevator operated by co-defendant Cargill in Cameron County had sufficient power and discretion to constitute an agency or representative.

▮ When venue is an issue on appeal, the appellate court must conduct an independent review of the entire record to determine whether venue was proper in the county of suit. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1993). If there is any probative evidence in the record that venue was proper in the county where judgment was rendered, the appellate court must uphold the trial court's determination. *Id.* The terms "agency" and "representative" as used in this statute are not to be interpreted in light of the law of respondeat superior. *Ford Motor Co. v. Miles,* 967 S.W.2d 377, 380 (Tex.1998) (cit-

ing *Milligan v. Southern Express, Inc.,* 151 Tex. 315, 250 S.W.2d 194, 197 (1952)). An ordinary employee is neither an agency or a representative, rather, the agency or representative must have broad power and discretion to act for the corporation. *Ruiz,* 868 S.W.2d at 759.

The parties disagree regarding whether we, as an appellate court, should consider evidence that tends to undermine the venue facts relied on by the plaintiffs. The disagreement centers on the proper interpretation of this passage from the Texas Supreme Court's *Ruiz* opinion:

The procedure mandated by this statute is fundamentally flawed because it allows appellate review of venue on a basis different from that on which it was decided. In deciding a motion to transfer venue, the trial court is required by Rule 87, TEX.R.CIV.P., to take as true those facts of which prima facie proof is made by the party with the burden of such proof; yet in reviewing the trial court's decision, an appellate court must reverse (there cannot be harmless error) if other evidence in the record, even evidence adduced after venue was determined, destroys the prima facie proof on which the trial court relied. Prima facie proof is not subject to rebuttal, cross-examination, impeachment or even disproof. The evidence as a whole may well show that prima facie proof was misleading or wrong. But while the wisdom of the statute may be challenged, there is no misunderstanding its plain language: an appellate court is obliged to conduct an independent review of the entire record to determine whether venue was proper in the ultimate county of suit.

*Ruiz,* 868 S.W.2d at 757–58.

▮ Porras relies on the sentence stating that "prima facie proof is not subject to rebuttal, cross-examination, impeachment, or even disproof." However, viewed in context, it becomes clear that this sentence refers to the proper approach for the *trial*

court. Porras neglects the sentence that states "Yet, in reviewing the trial court's decision, an appellate court must reverse ... if *other evidence* in the record ... destroys the prima facie proof." (emphasis added). We, as an appellate court, are instructed to consider not only the prima facie proof presented by the plaintiff to support venue, but also "other evidence" that "destroys the prima facie proof." *Id.* at 757.

The parties also disagree regarding the completeness of the record before us. Porras asked the trial judge to take judicial notice of the "files" in two other cases filed against Excel in Cameron County. Porras did not specify any parts of the "files" he wished the court to consider, nor did he provide the trial court with copies of any parts of the files. Neither Excel nor Porras has requested that any part of the record for either of those two cases be included in the record for this case, and no such documents are included in the record. Porras argues that, because the files of those two cases are not included in the record on appeal, Excel has failed to present this Court with a complete record, and we are obligated to presume that the missing materials support Porras.

■ We disagree. Because Porras never specified which parts of the files of the other two cases it considered beneficial to its venue arguments, Excel could not request specific items from those files. A request for "the file" would be akin to a request for "all papers filed in the case," which is impermissibly vague. TEX. R. APP. P. 34.5(b)(2) (request must be specific). Although rule 34.5(b)(1) permits "any party" to request the inclusion of additional items in the record, Porras made no such request. TEX. R. APP. P. 34.5(b)(1). We hold that Porras waived his right to rely on the files of the other two cases by not specifying any parts of those files it wished to rely on and by not requesting that the trial court clerk include any such items in the appellate record.

■ Porras asserts that the manager of the Cameron County grain elevator, Ted Warehime, had broad discretion because Cargill entrusted him with the following powers:

(1) training and supervising employees
(2) being responsible for safety at the Cameron County grain elevator
(3) assigning work to employees
(4) advertising for business
(5) granting or denying credit
(6) entering into contracts and authorizing expenditures for maintenance and repairs
(7) accepting payments for Cargill
(8) buying and selling grain, sometimes involving large sums of money
(9) handling bills of lading

Porras also contends that Warehime "was" Cargill in Cameron County, and, through Warehime, Cargill conducted regular and systematic business in Cameron County.

Excel contends that Warehime's authority in the management of employees was limited. Warehime did not have the authority to set wages for employees, rather, wages were set by Cargill employees elsewhere. Warehime had to obtain permission before terminating any employees. Although Warehime was authorized to hire temporary workers, the number of workers to be hired had to be approved by Warehime's supervisor in Wichita, Kansas.

With regard to Warehime's authority in financial matters, Excel insists that Warehime's authority was also carefully limited. Although Warehime bought and sold grain, sometimes amounts worth over $200,000 at a time, Warehime testified that the prices were controlled by "bid price" that came into his office from Minneapolis as often as three or four times a day. Although Warehime was authorized to try to get a better price, the bid price sent to him was used in approximately eighty-to-ninety percent of all transactions. Warehime explained that, due to competition from other grain elevators, he was usually unable to obtain a significantly better price. Ware-

hime had no discretion to accept a worse price than the one sent to him by Cargill. All the non-price terms of these transactions were fixed in advance by Cargill.

With regard to repairs, Warehime was authorized to spend no more than $2000, or $5000 during harvest season. Although Warehime sometimes extended credit, he had little discretion in determining whether to do so. In short, if someone had sufficient collateral to support the credit they sought, Warehime was instructed to offer credit; if the prospective debtor lacked sufficient collateral, Warehime was not to offer credit.

The powers exercised by Warehime bear some similarity to those exercised by the employee on whom venue was based in *Ruiz v. Conoco*. In *Ruiz*, the Texas Supreme Court held that a production foreman who oversaw fifty wells and six employees did not have sufficient power and discretion. *Ruiz*, 868 S.W.2d at 759. Like Warehime, the Conoco production foreman planned and assigned work for his employees and was responsible for emphasizing safety. *Id.* at 764 (Hightower, J., concurring and dissenting). The record in this case does not reflect that Warehime had broad discretion with regard to safety. The record does not relate any safety rules imposed by Warehime, nor any mention that Warehime ever actually did anything with regard to safety other than disseminating Cargill safety materials sent to him from headquarters in Minneapolis, and generally being "responsible" for safety.

Like Warehime's limited budget for maintenance and repairs, the Conoco foreman in *Ruiz* could only authorize repair expenses not to exceed $500. *Id.* at 759. With regard to repairs, it appears that Warehime had slightly more discretion than the Conoco foreman, because the dollar limit on Warehime's authority was higher, and the record does not reflect that Warehime was limited to pre-approved suppliers, as the Conoco foreman was. *See id.* With regard to Warehime's authority to assign tasks to employees, we recall that the employee relied on in *Ruiz* was a "foreman," with similar authority to change job assignments and establish work schedules. *Id.* at 764.

Other cases have considered powers analogous to those exercised by Warehime to be insufficient. In *Ford v. Miles*, employees at an automobile dealership negotiated sales that obligated Ford to warranty contracts on those vehicles. However, the Texas Supreme Court held that the authority of dealership employees in this regard was not the sort of "broad discretion" contemplated by the statute. *Miles*, 967 S.W.2d at 382. The supreme court also declared that any employee performing warranty service work on Ford's behalf at the dealership was not exercising broad discretion, but was "more akin to a 'servant.'" *Id.*

Porras also relies on Warehime's authority to advertise Cargill's business. Warehime testified that Cargill did "very little" advertising "through ads for 4–H and maybe for 4–H livestock, [and a] little co-op advertising." He added that they sometimes advertised on a farm radio station. He explained that his discretion with some of the advertising budget was limited, in that he could not advertise in something like a general circulation magazine, but rather was required to use farm publications. We conclude that, while the record reveals some exercise of power and discretion by Warehime with regard to advertising, his advertising activities do not rise to the level of broad power and discretion.

Porras relies on language in *Milligan* and echoed in *Ruiz* that an agency relationship exists where an employee provides a "more or less regular and permanent business operation." *Ruiz*, 868 S.W.2d at 759 (citing *Milligan v. Southern Express, Inc.*, 250 S.W.2d at 198). However, *Milligan* also required, and *Ruiz* reiterates, that the employee providing a more or less regular business operation must have broad discretionary powers. *Id.*

Cases from the courts of appeals have followed this reasoning and refused to find venue in a county where an employee carried on a regular, sometimes substantial, business operation, but lacked broad discretionary powers. *See, e.g., Atchison Topeka and Santa Fe Ry. v. Sanchez*, 890 S.W.2d 793, 795 (Tex.App.—Eastland 1994, no writ); *Rouse v. Shell Oil Co.*, 577 S.W.2d 787, 789–90 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd); *Colorado Interstate Gas Co. v. MAPCO, Inc.*, 570 S.W.2d 164 (Tex.Civ.App.—Amarillo 1978, no writ).

Porras argues that Warehime's authority to sign bills of lading for Cargill established Warehime as an agency for venue purposes, relying on *Port Terminal Railroad Ass'n v. Leonhardt*, 289 S.W.2d 649, 652 (Tex.Civ.App.—Fort Worth 1956, no writ). However, Warehime testified that signing bills of lading was a "formality" rather than a matter of broad power and discretion. Indeed, we question whether the reasoning advanced in *Leonhardt* remains viable after the supreme court's enunciation of the "broad power and discretion" test in *Ruiz*. We conclude that *Leonhardt* does not compel a holding that Porras had sufficient discretion to merit venue in Cameron County based on Warehime's authority to sign bills of lading.

The record does not reflect that Warehime possessed broad discretionary powers. For that reason, we hold that the trial court erred in refusing to transfer venue.

Excel's venue challenge entitles them to reversal of the trial court's judgment and a remand for new trial in a proper venue. Excel has also raised legal sufficiency of the evidence challenges, which, if meritorious, would require this Court to render judgment that Porras take nothing. Therefore, we must still consider Excel's challenges to the legal sufficiency of the evidence.

■ Excel's fourth issue asks whether the trial court erred in overruling its motion for directed verdict. This is akin to a challenge to the legal sufficiency of the evidence. *Thedford v. Missouri Pac. R.R. Co.*, 929 S.W.2d 39, 51 (Tex.App.—Corpus Christi 1996, writ denied). Excel contends that no evidence supports Porras's negligence claim because there is no evidence that Porras's injuries were foreseeable, and no evidence that Excel's negligence was the cause of Porras's injuries.

■ "The risk reasonably to be perceived defines the duty to be obeyed." *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 658–59 (Tex. 1999) (quoting *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99, 99–100 (1928) (Cardozo, J.)). For an injury to be foreseeable, it must be that (1) the injury is of such a general character as might reasonably have been anticipated, and (2) the injured party be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Mellon*, at 657. Elaborating on the first prong, the Texas Supreme Court has explained that "foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."*Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996).

No witness testified that he saw the knife fall and hit Porras in the arm. Excel compares this case to *Summers v. Fort Crockett Hotel, Limited*, 902 S.W.2d 20 (Tex.App.—Houston [1st Dist.] 1995, no writ) and *Hopper v. J.C. Penney Co.*, 371 S.W.2d 750 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n.r.e.). In both of those cases, the plaintiff had fallen, but no evidence existed to explain why. The courts of appeals held that there was no evidence that the negligence of the defendants proximately caused the plaintiffs' injuries. *Summers*, 902 S.W.2d at 26–27; *Hopper*, 371 S.W.2d at 752.

■ However, in this case, Excel's own records include documentation of a "personnel action" against employee Odilon Barajas for dropping a knife which struck

another employee in the arm, requiring hospitalization. Barajas's co-worker, Francisco Acosta, testified that he had warned Excel supervisors that it was unsafe to let Barajas work alone because Barajas did not have enough training and experience to be left alone. Acosta testified that knives were dropped in the area where Porras was injured "once or twice a day," and that the number of dropped knives was probably higher when new employees such as Barajas were involved. Acosta added that Excel management knew about the problem of knives being dropped and that the issue had been raised during safety discussions, but "nothing was ever done." Although some knives were blocked by the stand the workers stood on, some fell through into the area below where Porras was injured. Acosta stated that Porras's duties demanded that he be working in the area where he was injured at times when workers above him were using knives. Days after the accident, Barajas told Acosta, "They weren't helping me. So, you know, I lost the knife as I was going into the cut." [1]

Excel argues that Porras's injuries were not foreseeable because Porras had been instructed not to enter the area until the workers doing the cutting above him were on a break. However, Acosta testified that Porras had no choice but to work in the area while workers above him were cutting if he was going to keep the area cleared as assigned. Porras testified that Excel cared only that Porras keep up with his work so the processing chain would not have to be stopped. Porras added that he sometimes had to be in the area where he was injured "about every ten to fifteen minutes," which was far more frequent than the breaks taken by the men working above him. Porras told management that knives fell around him while he worked, but he was told "it doesn't matter. You have to clean it."

We hold that legally sufficient evidence demonstrates that Porras's injuries were foreseeable and were caused by the negligence of Excel leading to Barajas dropping his knife onto Porras.

Excel also challenges the legal sufficiency of the evidence supporting the jury's awards of mental anguish damages.[2] However, the question submitted to the jury asked them to evaluate "physical pain and mental anguish." Excel does not challenge the sufficiency of the evidence supporting an award for physical pain. When a damages issue is submitted broad-form, an appellate court cannot ascertain with certainty what amount is attributable to each element. *Greater Houston Transp. Co., Inc. v. Zrubeck*, 850 S.W.2d 579, 589 (Tex.App.—Corpus Christi 1993, writ denied). The only way a defendant can successfully attack a multi-element damages award on appeal is to address each and every element and show that not a single element is supported by sufficient evidence. *Id.* Because Excel challenges only the "mental anguish" aspect of this dam-

---

1. Excel argues that Acosta's testimony about what Barajas told him was inadmissible hearsay. However, this testimony fits under the hearsay exception rule 801(e)(2)(D), a statement offered against a party made by that party's agent or servant concerning a matter within the course and scope of the agency or employment, made during the existence of the relationship. TEX. R. EVID. 801(e)(2)(D); *see also Fojtik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669, 672 (Tex.App.—Corpus Christi 1988, writ denied 775 S.W.2d 632).

2. Excel's brief challenges the factual sufficiency of the evidence supporting the damages awarded for past and future earning capacity and past and future physical impairment. At one point in its brief, Excel states that "there was also no evidence, or, alternatively, legally insufficient evidence[,] to support the jury's answers to questions 1(A)[physical pain and mental anguish], 1(B)[loss of earning capacity], and 1(C)[physical impairment]." However, Excel's only legal sufficiency challenge supported by argument is the challenge of the mental anguish award. No argument is provided in support of Excel's stated challenge to the legal sufficiency of the evidence supporting the other damages awards. Therefore, we consider only the mental anguish issue. TEX. R. APP. P. 38.1(h).

ages finding and does not challenge an award for "physical pain," we must uphold the damages finding.

In conclusion, we sustain Excel's venue challenge and overrule their legal sufficiency challenges. The judgment of the trial court is reversed and we remand for a new trial in a proper venue.