**Roger GERDES, Jr. and Carolyn Gerdes, Appellants,**

v.

**John KENNAMER, Appellee.**

No. 13–02–657–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Dec. 6, 2004.

Rehearing En Banc Overruled Feb. 3, 2005.

See also 155 S.W.3d. 541, 2004 WL 2786079.

Cynthia T. Sheppard, Cuero, for appellants.

Murray Fogler, McDade Fogler Maines, L.L.P., Houston, for appellee.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

This is a suit for breach of fiduciary duty. Appellants Roger Gerdes and Carolyn Gerdes appeal a $915,392.65 judgment in favor of appellee John Kennamer. The Gerdeses challenge the trial court's venue ruling and assert that the evidence is legally and factually insufficient to support the jury's liability and damages findings in Kennamer's favor. They also complain of charge error in failing to condition a damages question as to Carolyn Gerdes on a finding of fraud. Kennamer raises a conditional cross-point challenging the sufficiency of the evidence to support an offsetting quantum meruit award to the Gerdeses. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Roger Gerdes and Kennamer, both United States citizens, were long-time friends and business associates. The disputes on which this litigation focused arose from their joint operation of Laguna Vista, a hunting and fishing lodge and ranch in San Fernando, Tamaulipas, Mexico. Kennamer bought the lodge and its associated improvements and assets in 1990 for a purchase price in excess of $500,000. The conveyance included a lease of the real property on which the lodge was located and an option to purchase the real property. Roger Gerdes and Kennamer structured Texas and Mexican business entities to operate the lodge. Kennamer contrib-

uted the lodge improvements and the capital. Roger Gerdes contributed "sweat equity" by managing the business and taking care of the lodge and hunters. Carolyn Gerdes also invested in Laguna Vista, provided bookkeeping and other personal services, and helped promote and book hunting trips.

In 1991, Kennamer decided to exercise his option to purchase the real estate. The agreed purchase price was $1,038,000. He paid $250,000 down and mortgaged the balance. At the time, Mexican law restricted title ownership to real property along the United States–Mexico border and prohibited transfer of title to non-Mexican citizens. At Roger Gerdes's suggestion, the grantor conveyed record title to the real property to four Mexican citizens: Roger Gerdes's son, lawyer, and employees. Kennamer did not receive record title. The transaction divided the real estate into four parcels. The son's parcel included the land where the lodge was located. The lawyer and the son's parcels were clear of any liens. The other two parcels were encumbered by the purchase-money lien. The four Mexican record title holders then executed purported powers of attorney "to John Kennamer and/or Roger Gerdes" to protect Kennamer's ownership interest.[1]

Operating expenses for Laguna Vista mounted. Kennamer defaulted on the purchase-money loan. The holder of the purchase-money lien instituted legal proceedings. Title to the real property became the subject of extensive criminal and civil proceedings in Mexico. Roger Gerdes and Kennamer both started looking for a buyer for the Laguna Vista lodge. In 1993, at Roger Gerdes's direction and on his instructions, the son revoked his power of attorney to Kennamer.

Roger Gerdes then formed two new business entities in 1997: Hacienda de Aves, which was a Texas corporation, and Immobiliarias Don Rogelio, a Mexican entity. Roger Gerdes and Carolyn Gerdes were the only principals of the two new business entities. Their purpose was to facilitate sale of the Laguna Vista lodge and property. The son transferred his interest in the real property, which was unencumbered by the purchase-money lien and on which the lodge improvements were located, to Immobiliarias Don Rogelio. Roger Gerdes began representing to potential buyers that he was part owner of Laguna Vista.

In December of 2000, Roger Gerdes forwarded to Kennamer at his ranch in Matagorda County, Texas a copy of a letter of intent that detailed a proposed transaction with a prospective buyer. He deleted references to his employment by the new entity and payment to him of bonuses and commissions. The transaction, which called for Kennamer to receive $750,000 in cash, did not close because of questions regarding title to the property. The letter of intent, however, alerted Kennamer that Roger Gerdes was claiming ownership of an interest in Laguna Vista.

As a result, Kennamer brought this lawsuit in Matagorda County. He alleged that the Gerdeses had taken monies from the lodge business without his authority. He claimed conversion, fraud, breach of fiduciary duty, and conspiracy to defraud. The Gerdeses counterclaimed for the value of their services and for attorney fees. They also sought a change of venue, which the trial court denied. A jury trial resulted in mixed liability and damages findings. The trial court entered offsetting judgments. The net result for purposes of this

1. The authenticity of the powers of attorney was hotly contested at trial.

appeal is a $915,392.65 judgment in favor of Kennamer against Roger Gerdes.[2]

We first analyze the venue question presented by the Gerdeses in issue three. We then address the sufficiency challenges and charge error asserted by the Gerdeses.

## II. VENUE

### A. Scope and Standard of Review

 Plaintiffs are accorded the right to choose venue first. *Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 677 (Tex.App.—Austin 2003, no pet.). As long as the plaintiff files suit in a county of proper venue (i.e., the county is at least a permissive venue and no mandatory provision applies), the trial court may not disturb the plaintiff's venue choice. *Id.* at 678 (citing *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 261 (Tex.1994)). The plaintiff's venue choice stands unless the defendant challenges it by a proper motion to transfer venue. *Chiriboga*, 96 S.W.3d at 678 (citing *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex.1999)). Once challenged, the plaintiff has the burden to present prima facie proof that venue is maintainable in the county of suit. Tex.R. Civ. P. 87(2)(a), (3)(a); *Chiriboga*, 96 S.W.3d at 678 (citing *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999)). The plaintiff's prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Chiriboga*, 96 S.W.3d at 678 (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex.1993) (op. on reh'g)).

 Nonetheless, we conduct an independent review of the entire record, including any trial on the merits, to determine whether any probative evidence supports the trial court's venue decision.

*Chiriboga*, 96 S.W.3d at 677 (citing *Ruiz*, 868 S.W.2d at 757); *Southern County Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 457 (Tex.App.—Corpus Christi 2000, no pet.). We consider not only the prima facie proof presented by the plaintiff to support venue but also "other evidence" that "destroys the prima facie proof." *Excel Corp. v. Porras*, 14 S.W.3d 307, 311 (Tex.App.—Corpus Christi 1999, pet. denied) (quoting *Ruiz*, 868 S.W.2d at 757); *see* Tex.R. Civ. P. 87.3. If there is any probative evidence supporting venue in the county of suit, we affirm the trial court's venue decision even if the evidence preponderates to the contrary. *Chiriboga*, 96 S.W.3d at 678 (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex.1995)). However, conclusive evidence to the contrary can "destroy the prima facie proof." *Chiriboga*, 96 S.W.3d at 678 (citing *Ruiz*, 868 S.W.2d at 757; *Rosales v. H.E. Butt Grocery Co.*, 905 S.W.2d 745, 750 (Tex.App.—San Antonio 1995, writ denied)).

 We review the evidentiary record in the light most favorable to the venue ruling. *Chiriboga*, 96 S.W.3d at 677–78. Our review is similar to that we employ when reviewing a trial court's fact findings and legal rulings in other contexts. *Ochoa*, 19 S.W.3d at 457. However, we do not review the trial court's venue ruling for factual sufficiency. *Id.* (citing *Ruiz*, 868 S.W.2d at 758). Here, the venue facts are generally uncontested, leaving only the legal question of whether venue was proper in Matagorda County. *See Ochoa*, 19 S.W.3d at 457.

We review de novo a trial court's application of the law to the facts. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Jackson v.*

---

**2.** Roger Gerdes did not supercede the judgment. The trial court issued turnover orders that were the subject of separate appellate proceedings.

*Kincaid,* 122 S.W.3d 440, 444–45 (Tex. App.—Corpus Christi 2003, pet. filed). In other words, we determine the correctness of the trial court's legal conclusions. *BMC Software,* 83 S.W.3d at 794. We are not obligated to give any particular deference to those conclusions. *Pegasus Energy Group v. Cheyenne Petroleum Co.,* 3 S.W.3d 112, 121 (Tex.App.—Corpus Christi 1999, pet. denied). As the final arbiter of the law, we have the power and the duty to evaluate legal determinations of the trial court independently. *Id.*

 Thus, if any probative evidence supports the trial court's venue decision, we must affirm it. *Chiriboga,* 96 S.W.3d at 678 (citing *Beadle,* 907 S.W.2d at 471). If no such evidence appears in the record, we must reverse the judgment and remand. Tex. Civ. Prac. & Rem.Code Ann. § 15.064(a) (Vernon 2002); *Chiriboga,* 96 S.W.3d at 678 (citing *Ruiz,* 868 S.W.2d at 758).

The parties agree that the general permissive venue statute is applicable here. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.002 (Vernon 2002). Section 15.002(a)(1) provides that venue is permissive in the county where "all or a substantial part of the events or omissions giving rise to the claim occurred." *Chiriboga,* 96 S.W.3d at 678 (quoting Tex. Civ. Prac. & Rem.Code Ann. § 15.002(a)(1), (2) (Vernon 2002)). In this case, we must determine whether there is any probative evidence to support the district court's implied ruling that "all or a substantial part of" the events giving rise to this lawsuit occurred

in Matagorda County. *Chiriboga,* 96 S.W.3d at 678.

## B. The Venue Facts

The Kennamers alleged in their original petition that some or all of the claims arose in Matagorda County. The Gerdeses alleged in their motion to transfer venue that all or a substantial part of the events or omissions giving rise to the claim occurred in Cameron County.[3] *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.064(a) (Vernon 2002). The parties agreed to develop the venue facts through live testimony during a temporary injunction hearing convened by the trial court at the same time as the venue motion. *See* Tex.R. Civ. P. 87.3(b).

 Viewed in the light most favorable to the trial court's venue ruling, testimony at the hearing established that Kennamer lived on a ranch in Matagorda County. During a visit by Roger Gerdes to the ranch in 1990, Kennamer and he reached an agreement that Kennamer would contribute Laguna Vista's assets and business, Roger Gerdes would contribute "sweat equity" by running the lodge, and they would divide the profits equally.[4] Thereafter, Roger Gerdes often telephoned Kennamer and visited with him at Kennamer's ranch regarding Laguna Vista business. Roger Gerdes picked up supplies and equipment for the lodge at Kennamer's ranch. The Gerdeses forwarded all the business records for Laguna Vista to Kennamer at his ranch. An accountant in Bay City pre-

---

3. The Gerdeses also requested a transfer for convenience to Cameron County, where they lived. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 2002). They alleged that suit in Matagorda County would work an economic and personal hardship on them and their witnesses, specifically citing the greater travel distance to and from Matagorda County as compared to Harlingen in Cameron Coun-

ty. The trial court's denial of the Gerdeses' motion for transfer on convenience grounds is not subject to review. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.064(c) (Vernon 2002).

4. Roger Gerdes testified that the agreement was struck in a telephone conversation with Kennamer at his ranch, not in person.

pared and filed tax returns for Laguna Vista from Matagorda County. Roger Gerdes faxed to Kennamer at his ranch the letter of intent regarding the proposed purchase of the property. Kennamer faxed from his ranch a response to that letter in which he complained about Roger Gerdes's actions in trying to sell the property. In July of 2001, Roger Gerdes faxed to Kennamer at his ranch a letter notifying Kennamer that Roger Gerdes's son had revoked his power of attorney in Kennamer's favor back in 1993. That July 2001 letter was the first knowledge Kennamer had that Roger Gerdes was claiming ownership of the Laguna Vista property. From his ranch in Matagorda County, Kennamer arranged with the potential buyer to share the expense of sending an attorney to Mexico to investigate the status of the title to the real property.

Viewed in the light most favorable to the trial court's venue ruling, testimony at trial also established that the Gerdeses transmitted requests for payment of expenses related to Laguna Vista to Kennamer at his Matagorda County ranch. Kennamer authorized wire transfers of operating funds for the business from there. Carolyn Gerdes sent the business's profit and loss statements to Kennamer or his accountant in Matagorda County.

### C. Venue Analysis

■ Our task is not to determine the best venue. *Chiriboga,* 96 S.W.3d at 681. Rather, in this case we must decide whether the venue facts satisfy the substantiality requirement of section 15.002(a)(1). *Id.* Accordingly, we conclude that the record contains probative evidence that a substantial part of the events giving rise to the claim occurred in Matagorda County. *See Colonial County Mut. Ins. Co. v. Valdez,* 30 S.W.3d 514, 527 (Tex.App.—Corpus Christi 2000, no pet.) (refusing to find ven-

ue decision erroneous where, inter alia, alleged misrepresentations were made to plaintiff in county of suit and other correspondence regarding claim was sent to county of suit); *see also Ochoa,* 19 S.W.3d at 457 (considering "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred" in reviewing venue decision). Therefore, we find no reversible error in the trial court's determination that venue was proper in Matagorda County. *See Chiriboga,* 96 S.W.3d at 678; *see also Valdez,* 30 S.W.3d at 527; *Ochoa,* 19 S.W.3d at 457. We overrule the Gerdeses' third issue.

### III. SUFFICIENCY OF THE EVIDENCE

#### A. The Sufficiency Issues on Appeal

The Gerdeses bring four challenges that the evidence is legally and factually insufficient to support the jury's findings: (1) of a relationship of trust and confidence between Roger Gerdes and Kennamer; (2) of damages for the breach of trust and confidence; (3) of fraud liability and damages; and (4) of civil conspiracy as to Carolyn Gerdes.

#### B. Preservation of Error

■ Except for fundamental error, to preserve a complaint for appellate review, a party must present to the trial court a timely and specific request, objection, or motion. Tex.R.App. P. 33.1(a); *Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d 278, 280 (Tex.1999) (per curiam). In particular, to preserve a legal-sufficiency challenge, a party must have specifically raised its complaint in: (1) a motion for instructed verdict; (2) an objection to the submission of a jury question; (3) a motion for judgment notwithstanding the verdict; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial.

*Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex.1991); *U.S.A. Precision Machining Co. v. Marshall,* 95 S.W.3d 407, 411 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Similarly, a motion for new trial is required to complain of factual insufficiency of the evidence to support a jury finding. Tex.R. Civ. P. 324(b)(2).

The requirements of motions for new trial are governed by the Texas Rules of Civil Procedure. Rule 321 requires a party to designate each ground it relies on in a motion for new trial in such a way that the trial court can identify and understand the complaint. *See* Tex.R. Civ. P. 321. The purpose of a motion for new trial is to provide an opportunity for the trial court, by granting a new trial, to cure any errors. *D/FW Commercial Roofing Co. v. Mehra,* 854 S.W.2d 182, 189 (Tex. App.—Dallas 1993, no writ). In addition, rule 322 provides that the court shall not consider grounds in a motion for new trial couched only in general terms. *See* Tex.R. Civ. P. 322. Therefore, the allegations in a motion for new trial must be sufficiently specific to enable the trial court to understand what the movant alleges was error. *Id.* Finally, an issue raised on appeal must correspond to a motion made to the trial court. *In re T.R.S.,* 931 S.W.2d 756, 758 (Tex.App.—Waco 1996, no writ); *D/FW Commercial Roofing,* 854 S.W.2d at 189. A motion for new trial that states one legal theory cannot be used to support a different legal theory on appeal. *D/FW Commercial Roofing,* 854 S.W.2d at 189.

### C. The Record

The Gerdeses did not move for an instructed verdict on any basis at the close of Kennamer's case in chief. As to sufficiency challenges, the Gerdeses moved for an instructed verdict at the close of all evidence only on the basis of "no or insufficient evidence of any profit" to be submitted to the jury. They objected generally to submission of damages questions to the jury on the basis there was no or insufficient evidence as to fair market value and lost profits.

In their motion for partial judgment notwithstanding the verdict, the Gerdeses asserted generally that "there was no and/or insufficient evidence of fraud, conversion, and/or breach of fiduciary duty." They also complained that "[a]s Plaintiff, as a matter of law, never owned the property involved herein as a matter of Mexican law, there was no damage due to any alleged breach of [Roger Gerdes's] fiduciary duty."

As to sufficiency challenges in their motion for new trial,[5] the Gerdeses asserted generally that "there was no and/or insufficient evidence of fraud and/or breach of fiduciary duty." They also reiterated their complaint that "[a]s Plaintiff, as a matter of law, never owned the property involved herein as a matter of Mexican law, there was no damage due to any alleged breach of [Roger Gerdes's] fiduciary duty." In addition, they asserted that "[t]here was no and/or insufficient evidence of any damages to Plaintiff as a result of any alleged breach of fiduciary duty."

---

**5.** The Gerdeses asserted, inter alia, two other grounds in their motion for new trial: (1) evidentiary error in that "Defendant's objection to Plaintiff's lack of qualifications to testify as to the fair market value of the business and/or property should have been sustained"; and (2) charge error in that "[t]he Court's charge failed to include at least one of the necessary elements of fraud, and the Court erred in overruling Defendants' objections to the proposed charge on that basis." The Gerdeses do not address any issue on appeal to evidentiary error. The charge error issue they raise on appeal does not challenge the fraud jury charge.

### D. Sufficiency Preservation–of–Error Analysis

■ In issue one, the Gerdeses argue that the evidence showed only that Roger Gerdes and Kennamer were old friends and business partners, not that they had a relationship of trust and confidence such that it was a fiduciary relationship. They did not challenge in the trial court at any juncture the legal sufficiency of the evidence of a fiduciary relationship between the parties. *See* Tex.R.App. P. 33.1(a); *see also McKenzie,* 997 S.W.2d at 280. Nor did they challenge the factual sufficiency of the evidence on this basis in their motion for new trial. *See* Tex.R. Civ. P. 324(b)(2). We hold that the Gerdeses waived their first issue at trial. We overrule issue one.

■ In issue two, the Gerdeses argue that Kennamer's proof of damages fails because he did not prove he owned the real property at issue. Therefore, the Gerdeses conclude, Kennamer's testimony about the fair market value of the real property is incompetent and constitutes no evidence. At trial, the Gerdeses moved for an instructed verdict only on the general basis of "no or insufficient evidence of any profit" to be submitted to the jury. They objected generally to submission of damages questions to the jury on the basis there was no or insufficient evidence of fair market value and lost profits. In their motion for partial judgment notwithstanding the verdict, the Gerdeses complained that "[a]s Plaintiff, as a matter of law, never owned the property involved herein as a matter of Mexican law, there was no damage due to any alleged breach of [Roger Gerdes's] fiduciary duty." They reiterated that complaint in their motion for new trial. In addition, they asserted in their motion for new trial that "[t]here was no

and/or insufficient evidence of any damages to Plaintiff as a result of any alleged breach of fiduciary duty." We find that the Gerdeses' general challenges during and after the trial to the sufficiency of the evidence of value, profits, and damages were not specific enough to enable the trial court to understand that what they alleged was error was that Kennamer's testimony about the fair market value of the property "was incompetent and constituted no evidence." *See* Tex.R. Civ. P. 322.[6]

■ Similarly in issue two, the Gerdeses argue that the evidence did not prove that the Laguna Vista lodge business was ever taken from Kennamer. We also find that the Gerdeses' general sufficiency challenges at trial were not specific enough to enable the trial court to understand what they alleged was error was that the evidence did not prove the Laguna Vista lodge business was ever taken from Kennamer. *See* Tex.R. Civ. P. 322.

Thus, the Gerdeses did not challenge in the trial court the legal sufficiency of the evidence on either of the two specific grounds urged by them in issue two. *See* Tex.R.App. P. 33.1(a); *see also McKenzie,* 997 S.W.2d at 280. Nor did they challenge the factual sufficiency of the evidence on these specific bases in their motion for new trial. *See* Tex.R. Civ. P. 324(b)(2). We hold that the Gerdeses waived their second issue by not complaining specifically on the same bases at trial as they assert on appeal. *See D/FW Commercial Roofing,* 854 S.W.2d at 189. We overrule issue two.

■ In issue four, the Gerdeses complain that Kennamer did not present legally or factually sufficient evidence: (1) of all of the elements of a fraudulent representation; and (2) of any resulting damages.

---

6. The only ground asserted by the Gerdeses in their motion for new trial with regard to Kennamer's testimony of the property's fair market value was in the context of an evidentiary objection. See note 5. The Gerdeses do not assert evidentiary error on appeal.

They first argue that Kennamer's testimony he would not have continued to capitalize Laguna Vista if he had known about the revocation of the son's power of attorney in 1993 evidences a failure to disclose, not an affirmative misrepresentation. We hold that the Gerdeses' general insufficiency allegations at trial were not specific enough to enable the trial court to understand what they alleged was error was that the evidence proved a failure to disclose, not an affirmative misrepresentation. *See* Tex.R. Civ. P. 322.[7] We hold that the Gerdeses waived the first part of their fourth issue at trial. *See id.* We overrule the first part of issue four.

 As their second subissue within issue four, the Gerdeses argue that the evidence is legally and factually insufficient to support the jury's finding of fraud damages. However, they do nothing more than summarily repeat the issue in their brief, without citation to legal authority or substantive analysis. Thus, we hold that the Gerdeses inadequately briefed the second part of issue four and failed to preserve it on appeal. *See* Tex.R.App. P. 38.1(h); *see also Morales v. Morales,* 98 S.W.3d 343, 346 (Tex.App.—Corpus Christi 2003, no pet. h.) (finding that inadequately briefed argument does not preserve issue for review). We decline to address the second part of issue four.

 In their first subissue within issue five, the Gerdeses complain that the evidence is legally and factually insufficient to support the jury's finding that Carolyn Gerdes engaged in a civil conspiracy. They did not challenge the legal sufficiency of the evidence on this basis in the trial court at any juncture. *See* Tex.R.App. P. 33.1(a); *see also McKenzie,* 997 S.W.2d at 280.

Nor did they challenge the factual sufficiency of the evidence on this basis in their motion for new trial. *See* Tex.R. Civ. P. 324(b)(2). We hold that the Gerdeses waived the first part of issue five at trial. We overrule the first part of issue five.

## IV. CHARGE ERROR

 In the second part of issue five, the Gerdeses complain that the jury's civil-conspiracy damages finding as to Carolyn Gerdes was not conditioned on a finding of fraud. To preserve error for appellate review regarding a jury instruction, counsel must object with enough specificity to enable the trial court to understand the precise grounds and make an informed ruling. *R & R Contrs. v. Torres,* 88 S.W.3d 685, 695 (Tex.App.—Corpus Christi 2002, appeal dismissed) (citing *Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986)). The test for determining if a party has preserved error in the jury charge is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. *R & R Contrs.,* 88 S.W.3d at 695 (citing *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992)). Where the complaint is that the trial court failed to submit a particular definition or instruction, the complaining party must have presented a written request for its inclusion, tendering the proposed definition or instruction in substantially correct wording. Tex.R. Civ. P. 278; *R & R Contrs.,* 88 S.W.3d at 695. If the charge contains an affirmative misstatement of the law, an objection suffices to preserve error. *R & R Contrs.,* 88 S.W.3d at 695 (citing *Religious of the Sacred Heart v. City of Houston,* 836 S.W.2d 606, 613–14 (Tex.1992)). At trial, the Gerdeses neither

---

7. The only ground asserted by the Gerdeses in their motion for new trial with regard to the elements of fraud was in the context of charge error. See note 5. The Gerdeses do not assert charge error on this basis on appeal.

submitted a conditional instruction nor objected to the charge on the basis they raise on appeal. *See* Tex.R.App. P. 33.1(a). We hold that the Gerdeses waived the second part of their fifth issue by not complaining about the charge on that basis at trial. *See id.* We overrule the second part of issue five.

### *CONCLUSION*

We have declined to address one subissue as inadequately briefed and overruled each of the rest of the Gerdeses' issues. Kennamer's cross-point is conditional and not necessary to our disposition of the appeal. *See* Tex.R.App. P. 47.1. We affirm the trial court's judgment.

Dissenting opinion by J. YAÑEZ.

Concurring opinion by J. HINOJOSA.

Concurring Opinion by Justice HINOJOSA.

I concur with the disposition and reasoning of Justice Castillo's majority opinion. However, I disagree with Justice Castillo's recommendation that the majority opinion be designated a "memorandum opinion." Because I oppose the designation of the majority opinion as a "memorandum opinion," I also concur with that part of Justice Yañez's dissenting opinion entitled "Designation of Opinion." *See* Tex.R.App. P. 47.4 (Opinion may not be designated memorandum opinion if author of concurrence or dissent opposes that designation).

Dissent by Justice CASTILLO.

Respectfully, I believe the opinion and the dissent meet the requirements of a *memorandum opinion set forth in rule 47.4.* Rule 47.4 states, in pertinent part:

An opinion *must* be designated a memorandum opinion unless it does any of the following:

> (a) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases;
>
> (b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas;
>
> (c) criticizes existing law; or
>
> (d) resolves an apparent conflict of authority.

Tex.R.App. P. 47.4. (Emphasis added). The majority opinion and the dissent do not meet any of the criteria. Thus, I would designate the opinion as a "memorandum opinion."

Respectfully, I disagree with the precedent the dissent and concurrence on designation set. They disagree with the designation of "memorandum opinion" because the issues are not settled. I read the first sentence of rule 47.4 which states, "If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the Court's decision and the basic reasons for it," to apply uniformly to those cases in which we need not reach a decision on the merits. In those cases before us that present issues for review, we then determine whether one of the criteria in the remaining part of rule 47.4 is met. In short, I construe the mandatory language in rule 47.4 to mean that designating our work as an "opinion" is the exception and not the rule.[1]

Dissenting opinion by J. YAÑEZ.

I disagree with the majority's conclusion that appellants waived their second and

---

**1.** On November 4, 2004, my rule 47.6 request was denied. Tex.R.App. P. 47.6. Under rule 47.6, a court en banc may change a panel's designation of an opinion.

fourth issues, in which they challenge, respectively, the legal and factual sufficiency of the evidence supporting the jury's findings that: (1) breach of the relationship of trust and confidence between Kennamer and Roger Gerdes ("Gerdes") caused Kennamer's damages (issue two); and (2) Gerdes committed fraud against Kennamer (first part of issue four). I would hold that: (1) appellants preserved their legal and factual sufficiency challenges to these issues; (2) the evidence is legally and factually insufficient to support the jury's award of $1,000,000.00 in damages because Kennamer failed to establish ownership of the property or assets upon which the award was based; (3) the evidence is legally and factually insufficient to support the jury's finding that Gerdes committed fraud against Kennamer; and (4) the evidence is legally and factually insufficient to support the jury's award of $1,000,000.00 in damages for conversion because Kennamer failed to establish ownership of the property or assets upon which the award was based. Accordingly, I would reverse the trial court's judgment and render judgment that appellees take nothing.

### Designation of Opinion

Texas Rule of Appellate Procedure 47.4 provides as follows:

> If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it. An opinion may not be designated a memorandum opinion if the author of a concurrence or dissent opposes that designation. An opinion must be designated a memorandum opinion unless it does any of the following:
>
> (a) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases;
>
> (b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas;
>
> (c) criticizes existing law; or
>
> (d) resolves an apparent conflict of authority.

Tex.R.App. P. 47.4.

■ Justice Castillo has recommended that the majority opinion be designated a "memorandum opinion." I disagree that the majority opinion should be designated a "memorandum opinion" because the issues in this case are not settled. *See id.* Further, as author of this dissenting opinion, I oppose the designation of the majority opinion as a "memorandum opinion." *See id.* Accordingly, the majority opinion must be designated as an "opinion." *See id.*

### Preservation of Error

The majority holds that appellants waived their second issue, in which they challenge the legal and factual sufficiency of the evidence supporting the jury's finding of damages caused by Kennamer's breach of his informal fiduciary relationship with Gerdes. In their motion for partial judgment notwithstanding the verdict, appellants asserted that "there was no/and or insufficient evidence of fraud, conversion, and/or breach of fiduciary duty." Similarly, in their motion for new trial, appellants complained that "[t]here was no and/or insufficient evidence of fraud and/or breach of fiduciary duty." At trial, appellants complained that "there is insufficient evidence of any fair market value." In both their motion for partial judgment notwithstanding the verdict and motion for new trial, appellants complained that "[a]s [Kennamer], as a matter of law, never owned the property involved herein as a matter of Mexican law, there was no dam-

age due to any alleged breach of Movant Roger Gerdes, Jr.'s fiduciary damage [*sic* ], and therefore Movants are entitled to a take-nothing judgment thereon." The majority holds that appellants' complaints were "not specific enough" to preserve their challenges to the evidence supporting the jury's findings that Gerdes breached his fiduciary duty to Kennamer, causing Kennamer to suffer $1,000,000.00 in damages. I disagree.

"The purpose of a motion for new trial is to provide an opportunity for the trial court to cure any errors by granting a new trial." *D/FW Commercial Roofing Co., Inc. v. Mehra,* 854 S.W.2d 182, 189 (Tex. App.—Dallas 1993, no writ). "Therefore, the allegations in a motion for new trial must be sufficiently specific to enable the trial court to clearly understand what is being alleged as error." *Id.* I would hold that appellants' complaints were sufficiently specific to enable the trial court to understand that appellants were challenging the sufficiency of the evidence supporting Gerdes's breach of his fiduciary duty and the sufficiency of the evidence supporting Kennamer's damages because Kennamer failed to prove that he owned the property on which the damages were based.

In the first part of issue four, appellants challenge the legal and factual sufficiency of the evidence supporting the jury's finding that Gerdes committed fraud against Kennamer. The majority holds appellants waived their challenge to the sufficiency of the evidence supporting the finding of fraud. As noted above, appellants complained in both their motion for partial judgment notwithstanding the verdict and their motion for new trial that "there was no/and or insufficient evidence of fraud." I would hold that appellants sufficiently preserved their challenge to the sufficiency of the evidence supporting the jury's finding of fraud.

## Damages

In their second issue, appellants challenge the legal and factual sufficiency of the evidence supporting the jury's finding of damages caused by Gerdes's breach of his fiduciary duty to Kennamer.

In assessing Kennamer's damages resulting from Gerdes's breach of his fiduciary duty, the jury was instructed to consider the fair market value of the assets taken from Kennamer by Gerdes. Thus, Kennamer was required to establish: (1) ownership of assets that Gerdes took from him; and (2) the fair market value of such assets.

When we review a "no evidence" or legal sufficiency of the evidence issue, we must consider all of the record evidence in a light most favorable to the party in whose favor the verdict has been rendered, and indulge in that party's favor every reasonable inference deducible from the evidence. *Formosa Plastics v. Presidio Eng'rs,* 960 S.W.2d 41, 48 (Tex.1998); *Adams v. H & H Meat Prod., Inc.,* 41 S.W.3d 762, 770 (Tex.App.—Corpus Christi 2001, no pet.). When both legal and factual sufficiency issues are raised, we must first review the legal sufficiency to determine if there is any evidence of probative value to support the judge's findings. *Adams,* 41 S.W.3d at 770 (citing *Glover v. Tex. Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981) (per curiam)). The findings of fact must be upheld if there is more than a scintilla of evidence in support thereof. *Id.* There is more than a scintilla when the evidence creates more than a mere surmise or suspicion of its existence. *Id.*

If the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence. *Id.* When we review an "insufficient evidence" or factual sufficiency of the evidence issue, we consider, weigh and examine all of the

evidence which supports or undermines the finding. *Id.* We set aside the verdict only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, we may not substitute our judgment for that of the fact finder's conclusions. *Id.*

### Kennamer's Testimony

Kennamer testified that he paid $543,000 to purchase the hunting lodge operation in Mexico, including the assets, name, and goodwill of the company. He and his wife were the sole owners of the Texas corporation set up to run the business; Gerdes was the owner of the Mexican corporation set up to run the business. Kennamer later agreed to purchase the land surrounding the lodge (approximately 8,000 acres) from the Montemayor family. He made a down payment of $250,000.00. Because title to the property was restricted to Mexican citizens, the land was divided into four parcels as follows: one parcel (with the lodge) was placed in the name of Gerdes's son, Roger Gerdes III ("Rusty"); a second parcel was placed in the name of Cesar de la Garza, a Mexican attorney who represented Kennamer and Gerdes in the transaction; the third and fourth parcels were in the names of Maria Avalos, Gerdes's maid, and her husband, Cesar Avalos. Gerdes provided Kennamer with powers of attorney executed by each of the title holders. In 1993, Rusty revoked the power of attorney in Kennamer's favor and later executed a second power of attorney in favor of his father. Mr. Montemayor filed a criminal suit against Kennamer, Gerdes, and the other title holders.

Sometime after Montemayor filed the lawsuit, Kennamer stopped making payments on the property. Kennamer concedes he does not own the two Avalos parcels because those parcels are encumbered by debt. Kennamer claims ownership of the other two parcels (in the names of Rusty and de la Garza) "free and clear." Kennamer's damages are based on "the improvements and the land and the business and the assets of the business that are free and clear and unencumbered;" the unencumbered property consists of approximately 900 acres. Gage, a company that expressed interest in purchasing the lodge, offered a million and a half dollars for the lodge and the twenty acres it sits on. Kennamer valued the remaining 880 acres at $1500 per acre. He estimated the value of the lodge business (apart from the buildings and land) at $3 million, based on a formula of ten times the annual gross income of the business, which he estimated at $300,000.00. Kennamer requested damages of $2.7 million for the lodge, improvements, and land; he requested an additional $2 million for the "goodwill" of the business.

On cross-examination, Kennamer testified that after he filed his lawsuit, he learned that under Mexican law, the person whose name appears on a deed is the actual owner. Kennamer admitted he received a memorandum from Pat Kelly, an attorney who traveled to Mexico to investigate the issue of who held title to the property. The memorandum stated that the record owners of the property held title under Mexican law. Kennamer also conceded that the powers of attorney executed by de la Garza and Rusty are now invalid and ineffectual under Mexican law, although he contends the documents were valid at the time they were executed. He conceded that the power of attorney executed by Rusty is dated September 24,

1991, but was not notarized until January 22, 1992.

Kennamer testified that he made numerous attempts to contact Rusty regarding the status of title to the property. When Rusty failed to return his calls, Kennamer left a message on his answering machine. A transcript of the message was admitted at trial:

> Ummm, Rusty, it's John Kennamer. Uhhh, it's about 9:15 my time. Uhhh, I really would like to talk to you. Uhhh, I've got a big meeting tomorrow with a bunch of lawyers in Harlingen and uhhh, I'd like to keep you out of this meeting if possible but uhhh, if I can't talk to you I can't help you. Uhhh, so it might be worth a couple of hundred thousand to you if you were to pick up the telephone and call me. And uhhhh, I can kinda fill you in on what's fixin' to come down. Uhhh, I know you've got a big investment in your career, you and your wife and uhhh if this thing is not settled pretty quick, then uhh, all of this lawsuit and everything could have a very negative effect on your licensing,[1] so give me a call and let's, let's you and I work this thing out to your benefit and both of us can go on down the road and be happy. So give me a call, it's area code [phone number]. I'll be up late this evening and I'll be leaving early tomorrow morning for The Valley, so uhhh, please give me a call regardless what time you get in and uhhh, that way I can do you the best service possible. I'll be waiting on your call uh Rusty. I'll talk to you later. Thank you.

At trial, Kennamer was questioned about the message:

> Q [Gerdes's counsel]: Okay. So, what you're doing is you're threatening him—

A [Kennamer]: No, I'm not.

Q: You're threatening him—

A: I'm making him aware of the facts.

Q: You're threatening him that if he doesn't call you back—

A: He's going to be sued.

Q: —you're going to sue him?

A: That's right. That's not a threat. That was a promise.

Q: And you carried through with your promise?

A: I did.

. . . .

Q: But you sued him anyway and left him in the lawsuit until Monday.

A: Until Friday.

Kennamer admitted that he had agreed to release Rusty from the lawsuit in exchange for Rusty's agreement to voluntarily appear as a witness. In addition, the following exchange occurred:

> Q [Gerdes's counsel]: And that also means that—I'm sorry. One of the other conditions [for letting Rusty out of the lawsuit] was that he is supposed to give to you *whatever interest he has* in the land that's down in Mexico, true?

A [Kennamer]: Not to give me anything.

Q: You're not going to buy it from him?

A: He doesn't own it.

Q: You're not going buy—

A: He testified he did own it. He was holding it as a titleholder, a nominal titleholder.

Q: Did the word "give" cause a problem? That he has to transfer any interest he has—

---

**1.** Kennamer testified that he meant, "Please call me because I don't want anything to happen that would interfere with your real estate license."

A: *He agreed to sign whatever paperwork was necessary once the lawsuit was determined.* (emphasis added).

Kennamer agreed to purchase the 8,000 acres of property from the Montemayors for a purchase price of $1,038,000.00, but admitted that he stopped making payments after paying only $340,000.00. He also admitted that since the time of the original purchase, there have been no separate agreements to carve out any smaller portion of the property. Thus, although Kennamer claims that he "bought the land," he admits that he did not finish paying for "part" of the land.

Viewing the evidence in the light most favorable to Kennamer, I would hold that the evidence is legally insufficient to support the finding that Kennamer established ownership of any assets in Mexico. Thus, the evidence is legally insufficient to support the jury's finding that the fair market value of assets taken *from Kennamer* by Gerdes is $1,000,000.00.

To recover for a claim of breach of a fiduciary relationship, a plaintiff must establish (1) the existence of a fiduciary relationship; (2) breach of the duty; (3) causation; and (4) damages. *Parks Davis Auctioneers, Inc. v. Verna Drilling Co.*, 589 S.W.2d 168, 169 (Tex.App.—El Paso 1979, writ dism'd). Because Kennamer failed to establish the element of damages, I would hold that the evidence is legally and factually insufficient to support the jury's finding that breach of the alleged informal fiduciary relationship between Kennamer and Gerdes caused Kennamer's damages. Accordingly, I would sustain appellants' second issue.

### Fraud

In the first part of their fourth issue, appellants contend the evidence is legally and factually insufficient to support the jury's findings that Gerdes committed fraud against Kennamer.

The elements of actionable fraud in Texas are: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001) (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983)).

Here, the jury was instructed as follows: Fraud occurs when—

1. A party makes a material misrepresentation,

2. The misrepresentation is made with knowledge of its falsity or recklessly without any knowledge of the truth and as positive assertion,

3. The misrepresentation is made with the intention that it should be acted on by the other party, and

4. The other party acts in reliance on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false representation of fact.

In support of their fraud claim, appellees cite Gerdes's failure to disclose Rusty's 1993 revocation of the power of attorney in Kennamer's favor. They also cite various "other material facts that Gerdes failed to disclose to Kennamer." The supreme court has held that "[a]s a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex.2001). "Thus, silence may be equivalent to a false representation only when

the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Id.* Here, however, the jury's answer to the fraud question was not conditioned on any finding of a duty to disclose or of a confidential or fiduciary relationship between Gerdes and Kennamer. The jury was not provided any instruction on failure to disclose when such a duty exists. *See* STATE BAR OF TEXAS, PATTERN JURY CHARGE, PJC 105.4.

The jury found that Kennamer discovered, or should have discovered, the alleged fraud in January 2001; it awarded fraud damages in the amount of $35,000.00. In support of the jury's damage award, appellees cite plaintiff's exhibit 53, which is a list of sums purportedly invested by Kennamer in the lodge business. The list details investments by year, beginning in 1986 and including 1990 through 2000. However, the last year detailing an investment by Kennamer is 2000. Thus, there is no evidence supporting the jury's finding that Kennamer suffered $35,000.00 in damages in reliance on a misrepresentation by Gerdes. I would sustain appellants' fourth issue.

### Conversion

To prove a cause of action for conversion, a plaintiff must show that the defendant wrongfully exercised dominion and control over the plaintiff's property in denial of or inconsistent with the plaintiff's rights in that property. *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 622 (Tex.1992); *see also Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1993, no writ) (elaborating). Because Kennamer failed to establish ownership of any assets in Mexico, he cannot recover for conversion and is not entitled to any damages award on the basis of such ownership.

I would reverse the trial court's judgment and render judgment that appellees take nothing.